JOHN W. A. SANFORD, plaintiff in error, *vs.* DANIEL B. SANFORD defendant in error.

Tenant for life did not forfeit his estate in the land by selling and conveying the whole fee in 1835. Remainders were not affected, and remaindermen could not enter upon the purchaser until the death of the tenant for life. The dissenting opinion of WALKER, Judge, in *King vs. Leeves, 36 Georgia Reports, 199,* approved and followed. See, also, *48 Georgia Reports, 339.* WARNER, Chief Justice, dissented.

Life estates. Forfeiture. Before Judge BARTLETT. Baldwin Superior Court. February Term, 1875.

On June 20th, 1874, John W. A. Sanford brought complaint against Daniel B. Sanford, for house and lot situated in the city of Milledgeville. Amongst other defenses the defendant pleaded the statute of limitations.

The evidence disclosed the following facts:

By the will of Jesse Sanford, the property in dispute was devised to John W. A. Sanford for life, with remainder to his children, one of whom was the plaintiff. This instrument was admitted to probate on March 9th, 1827. The life tenant died in September, 1870. Before his death, in July, 1835, he made an absolute conveyance of said house and lot to one James Gladdin. Defendant showed a regular chain of title, accompanied by possession, from Gladdin to himself, covering two-thirds of said property; he filed a disclaimer as to the other third.

John W. A. Sanford, the life tenant, left three children—the plaintiff, Eugene, and Theodore G. The plaintiff held a conveyance from the latter covering his interest in the property in controversy. At the time of trial, February, 1875, plaintiff was fifty years of age and Theodore G. thirty-nine.

The jury, under the charge of the court, found for the defendant. The plaintiff moved for a new trial, upon the following grounds, to-wit:

1st. Because the court erred in refusing to charge "that if the plaintiff holds the title of Theodore G. Sanford, and he, Theodore, was only twenty-five years old when the statute of

Sanford *vs.* Sanford.

limitations was finally repealed, in 1863, then his right of action is not barred, and he is entitled to recover."

2d. Because the court erred in charging the jury, without qualification, "that if J. W. A. Sanford, the life tenant, did, in 1835, sell and convey absolutely, the land in dispute, his said sale of the fee did instantly work such a forfeiture of the life estate to the remaindermen as gave them the right of entry and of action then, and set the statute of limitations in motion as against them, and that seven years adverse possession by the purchaser, under color, barred the right of action of plaintiff as a remainderman."

The motion was overruled, and the plaintiff excepted.

CRAWFORD & WILLIAMSON, for plaintiff in error.

SANFORD & FURMAN, for defendant.

BLECKLEY, Judge.

What was the common law? Blackstone, in 2 Com., states it thus: "Alienations by particular tenants, when they are greater than the law entitles them to make, and divest the remainder or reversion, are also forfeitures to him whose right is attacked thereby. As, if tenant for his own life aliens by feoffment or fine for the life of another, or entail, or in fee; these being estates which either must or may last longer than his own, the creating of them is not only beyond his power and inconsistent with the nature of his interest, but is also a forfeiture of his own particular estate to him in remainder or reversion." Reading this passage attentively it seems plain that the learned commentator did not intend to teach that *all* alienations by particular tenants, when they are greater than the law entitles them to make, are attended with forfeiture. His words are, "alienations by particular tenants, when they are greater than the law entitles them to make, *and divest the remainder or reversion,*" etc. In giving examples he does not say that if tenant for his own life aliens for the life of another, or entail, or in fee, he forfeits his own particular estate; but that he incurs the forfeiture if he "aliens by *feoffment or fine,*"

Sanford *vs.* Sanford.

etc. That Blackstone means to restrict the rule of forfeiture to alienations which divest the remainder or reversion, is shown, too, by the authority to which he refers. He cites Co. Litt., 251; and there Lord COKE says: "It is to be observed that a forfeiture may be made by the alienation of a particular tenant, two manner of ways; either *in pais*, or by matter of record. *In pais*, of lands and tenements which lie in livery, (whereof Littleton intendeth his case,) where a greater estate passeth by livery than the particular tenant may lawfully make, whereby the reversion or remainder is divested, as here in the example that Littleton putteth when tenant for life alieneth in fee, which must be understood of a feoffment, fine or recoverie by consent." Feoffment, fine and common recovery, were modes of alienation which divested remainders and reversions. Undoubtedly, to *enfeoff* a stranger in fee simple was to incur a forfeiture of the estate for life or years: 2 Black. Com., 153. But there are many direct assertions in the books to the effect that conveyance by bargain and sale works no forfeiture. In 4 Comyn's Dig., Forfeiture, (A. 3,) it is laid down that, "if tenant for life bargains and sells to another in fee, it is no forfeiture," citing 2 Leo., 60. In 3 Bacon's Abr., 465, Estate for Life, (C,) the like doctrine is asserted in these words: "So, if tenant for life of lands, by indenture enrolled, bargains and sells them to J. S. and his heirs, this is no forfeiture, but the bargainor passes only what he may lawfully pass; for though by the statute 27 H., 8, c. 10, deeds enrolled grew a common conveyance for the transferring of lands, which could not pass at common law without the investiture of livery, yet being a manner of conveyance known before at common law, it was construed to have no new effect given it by the statute but what the statute expressed." In Stearnes on Real Actions, pp. 10, 11, this statement occurs: "But it is to be observed, that even in England, no conveyance of the particular tenant creates a forfeiture, except those which divest the remainder or reversion; which effect is produced *only* by *feoffment, fine,* and *common recovery.* A conveyance by lease and release, or bar-

gain and sale, made by the particular tenant, and purporting to convey the fee simple, is no forfeiture, nor will it defeat a contingent remainder; because the operation of these conveyances is only to transfer to the releasee or bargainee such estate as the releasor or bargainor may *rightfully* convey: 2 Leon., 60; 3 Mod., 161. And this distinction between the operation of a feoffment, fine and recovery on the one hand, and a bargain and sale, lease and release, and covenant to stand seized, on the other, is what is meant by the expression which sometimes occurs, where the former are described as *tortious*, and the latter as *rightful* conveyances."

Numerous other authorities bearing in the same direction might be cited. Quite a number of them will be found referred to by Judge WALKER in the able dissenting opinion which he delivered in *King vs. Leeves*, 36 *Georgia Reports*, 199; an opinion so excellent that I despair of adding to it anything of value in this or any other which I might attempt on the same subject.

It should be mentioned, (as was glanced at by Judge WALKER,) that there are, in the books, traces of forfeiture as incident, sometimes, to general warranty of title in conveyances even by bargain and sale. The record before us in the present case is not such as to call for a decision on this special topic. But, as tending to throw some light on the effect of warranty in modern conveyances, I refer to 2 Smith's Leading Cases, American Notes, pp. 519, 520, 521, 529, edition of 1847. See, also, 18 *Georgia Reports*, and compare with 22 *Georgia Reports*, 627. I will observe, moreover, that *dicta* by writers are to be met with suggestive of this distinction; that though a conveyance by bargain and sale would not, of itself, produce forfeiture, forfeiture might, nevertheless, result from letting the purchaser into possession under such a conveyance, the admitting of the purchaser into possession of the land, super-added to the bargain and sale, being the same, in effect, as technical livery of seizin. I have, however, seen no distinct adjudication of such a doctrine of forfeiture.

Accepting Blackstone's exposition of the common law as correct, and construing his language in the light of Coke upon Littleton, the authority to which he himself refers, a majority of the court believe that, tested by the common law, the case at bar is not one of forfeiture. And they are of opinion, also, that no legislation of Georgia has introduced any new case of forfeiture by alienation. In our statutory provisions touching deeds of bargain and sale, it was not the purpose of the legislature to bring in an old feudal incident which previously did not attend that mode of conveyance: See 3 Dall., 486. Nor by declaring that a fee simple estate should always be implied where a less one was not expressed, was it contemplated that the maker of a deed should be able to convey an estate greater than his own, or divest that of any other person. Tenant for life and remainderman are not even privies in estate: 29 *Georgia Reports,* 374; nor is the former a trustee for the latter: 27 *Ibid.,* 96.

Forfeiture had its origin, not in the idea of trust, but in the idea of allegiance, of fealty. For the tenant to usurp and dispose of the estate of his lord, or of his lord's heir, or of those appointed by his lord to take in remainder, was disloyal. It savored of rebellion, and was punished with forfeiture. But, at best, there was something in the contrivance that must have been troublesome; for, as they seized the land and not the price, the real loss could not but fall sometimes, and perhaps most frequently, upon an unfortunate or indiscreet feoffee, instead of upon the revolted tenant who made the wrongful feoffment.

In reference to protecting, by legal or equitable remedies, the reversion or remainder against waste, that would be as practicable with the land in the possession and use of the life tenant's vendee, as with it in the possession and use of the original life tenant himself. The latter was never restrained by law from parting with the custody and care of the premises after making a legal conveyance of his own interest. Whoever succeeded him was bound, in respect to waste, just as he had been bound. That is still the position of the ven-

dee; and the rule can be applied to him whether the deed under which he holds purports to pass the fee, or only the lesser estate which his vendor had the right to convey. One who comes in by purchase under a tenant for life must abstain from waste, no matter how broad may be his claim or the conveyance upon which he rests it. As against the reversioner or the remaindermen he takes no more than the title of his vendor.

Judgment reversed.

JACKSON, Judge, concurred, but furnished no written opinion.

WARNER, Chief Justice, dissenting.

This was an action brought by the plaintiff against the defendant in the statutory form, to recover the possession of a certain described tract of land therein mentioned. The defendant pleaded the statute of limitations in bar of the plaintiff's right to recover the possession of the land sued for. On the trial of the case, the jury, under the charge of the court, found a verdict for the defendant. A motion was made for a new trial on the ground of error in the charge of the court as to the plaintiff's right of action being barred by the statute of limitations. The court overruled the motion, and the plaintiff excepted.

It appears from the record and bill of exceptions, that the plaintiff derived his title to the premises in dispute under the will of Jesse Sanford, who devised the same to his son, John W. A. Sanford, for life, with remainder to his children; that the plaintiff claimed title to the land in his own right as one of the remaindermen, and by a deed from his brother of his interest in the land, who was also a remainderman, both being the children of J. W. A. Sanford, the life tenant, who died in 1870. Defendant admitted his adverse possession of the land sued for, and offered in evidence a deed made by J. W. A. Sanford, the tenant for life, in 1835, conveying a fee simple title to the premises in dispute, to Gladdin, and showed that in 1844

Sanford *vs.* Sanford.

Gladdin, by deed, conveyed the land in fee simple to D. B. Stetson; that in 1858 Stetson conveyed the land by deed to Orme; that in 1867 Orme conveyed the land by deed to' W. S. Stetson, and that in 1870 W. S. Stetson conveyed the land by deed to the defendant, all of which deeds of conveyance were duly recorded. It was also proved that at the time of the trial the plaintiff was fifty years of age, and that the other remainderman was thirty-nine years of age. The action was commenced on the 20th of June, 1874. The court charged the jury the law as applicable to the facts of the case, substantially as it was ruled by the majority of this court in *King vs. Leeves*, 36*th Georgia Reports*, 199. If the ruling of the court in that case was error, then the ruling of the court below in this case, was error; but if the ruling of the court in that case was right in principle, then the ruling of the court below in this case was right in principle, as I will endeavor to show that it was, as well as I can in the brief space of time allowed me for that purpose.

The first question to be considered is, did the deed of bargain and sale of the premises in dispute, executed by J. W. A. Sanford, the life tenant, to Gladdin, in 1835, conveying to him the entire estate in the land in fee, work a forfeiture of his life estate therein, under the law of force in this state at that time? By reference to the acts of 1785 and 1821, (Cobb's Digest, 164 and 169,) it will be perceived that a conveyance of land in this state by deed of bargain and sale, is distinctly recognized as the proper and legal mode of conveying the same. The second section of the act of 1821 declares that "All gifts, grants, feoffments, bequests, devises and conveyances of every kind whatsoever of real or personal property hereafter made or executed within this state, shall be held and construed to vest in the person or persons to whom the same are made or executed, an absolute, unconditional fee simple estate, unless it be otherwise expressed, and a less estate mentioned and limited in such gift, grant, feoffment, bequest, devise or conveyance." The third section of the act repeals all conflicting laws, construing the acts of 1785 and

1821 together, it was manifestly the clear intention of the general assembly to abolish the technical modes of conveyance of land in this state, which had existed and did exist in England, and to substitute therefor the more simple mode of conveyance by deed of bargain and sale, and such is believed to have been the uniform construction of those acts in relation to the conveyance of land in this state, and therefore it is not necessary that we should go behind those acts to inquire what would have been the *technical* effect of the different modes of conveyance of land in England prior thereto.

The pertinent inquiry here is, what is the legal effect of a conveyance by a tenant for life of the whole estate in fee simple, by a deed of bargain and sale ?  In this state, a deed of conveyance by bargain and sale conveys the entire estate of the grantor in the land which he undertakes to convey to the grantee, without the formality of livery of seizin, or any other formality, except such as the statutes of this state require in the execution of the deed of conveyance.  J. W. A. Sanford, the tenant for life, had only a particular life estate in the premises in dispute, when he undertook, in 1835, to convey by deed of bargain and sale to Gladdin, the entire fee simple estate therein.

Now let us examine what was the common law of force in this state, applicable to such a conveyance by the particular tenant for life, of the entire estate in fee, made by a deed of conveyance recognized by our law as a legal and proper mode of conveyance to convey a fee simple estate in land.  Blackstone, in enumerating the various means by which title to land may be forfeited, specifies as one instance: "By alienation contrary to law:" 2 Bl. Com., 268.  The learned author, in commenting upon alienations contrary to law, uses the following language: "Lastly, alienations *by particular tenants*, when they are greater than the law entitles them to make, and divest the remainder or reversion, are also forfeitures to him whose right is attacked thereby.  As, if tenant for his own life, aliens by feoffment, or fine, for the life of another, or intail, or in fee; these being estates which either must, or may,

Sanford *vs.* Sanford.

last longer than his own, the creating them is not only beyond his power, and inconsistent with the nature of his interest, but is also a forfeiture of his own particular estate to him in remainder or reversion.   For which there seem to be two reasons. First, because such alienation amounts to a renunciation of the fœudal connection and dependence; it implies a refusal to perform the due renders and services to the lord of the fee, of which fealty is constantly one; and it tends in its consequence to defeat and divest the remainder or reversion expectant; as, therefore, that is put in jeopardy by such act of the particular tenant, it is but just that, upon discovery, the particular estate should be forfeited, and taken from him who has shown so manifest an inclination to make an improper use of it.   The other reason is, because the particular tenant, by granting a larger estate than his own, has, by his own act, determined and put an entire end to his own original interest; and on such determination, the next taker is entitled to enter regularly as in his remainder or reversion:" 2 Bl. Com., 275.

In speaking of estates upon condition implied in law, the same learned commentator remarks:   "Upon the same principle proceed all the forfeitures which are given by law, of life estates and others, for any acts done by the tenant himself that are incompatible with the estate which he holds.   As if tenants for life, or years, enfeoff a stranger in fee simple, this is, by the common law, a forfeiture of their several estates, being a breach of the condition which the law annexes thereto, to-wit: that they shall not *attempt* to create a greater estate than they themselves are entitled to:" 2 Bl. Com., 153.   This principle of the common law was applicable here because it was calculated to protect honest people from the fraudulent attempts of tenants for life in conveying a greater estate in the land than they had in it, whereby honest purchasers might be deceived and defrauded, as well as remaindermen injured thereby.   Assuming that Blackstone understood what was the common law applicable to a tenant for life who attempted to convey a greater estate in the land than he had therein, at the time of our adopting statute, the principles thereof were

Sanford *vs.* Sanford.

applicable to a tenant for life in this state, who attempted to convey the fee simple title to the land by a deed of bargain and sale, that being the usual and recognized mode for the conveyance of land in this state, and the life estate of the particular tenant was forfeited, and the remaindermen had the right to enter thereon. It was a well settled principle of the common law, as stated by Blackstone, that if a tenant for life attempted to convey the land to a stranger in fee simple, that was a forfeiture of his life estate therein, that being a breach of the condition which the law annexed thereto, to-wit: that he should not attempt to create a greater estate in the land than he himself had, and that same principle was applicable to a similar conveyance here by a life tenant, by a deed of bargain and sale, though not for all the reasons that may have existed in England. The general assembly must have understood that such was the common law of force in this state, when the 2260th section of the Code was adopted in 1863, otherwise there would have been no necessity for the enactment of that section.

J. W. A. Sanford, the life tenant, having attempted to convey the entire estate in the land to Gladdin, in fee simple, and thereby forfeited his life estate therein in 1835, is Gladdin, and those claiming under him, protected in their possession of the land by a prescriptive title, or by the statute of limitations, as against the right of entry of the remaindermen, Sanford, the tenant for life, having died in 1870. It is insisted that although the life estate of the tenant may have been forfeited by the attempted conveyance of the land in fee by him in 1835, still the remaindermen had the right to enter on the land within seven years from the death of the tenant for life; that the remaindermen had two rights of entry, one accruing immediately upon the forfeiture of the life estate, the other upon the death of the tenant for life.

This argument *ignores* the positive provisions of the statute which was of force in this state at the time the right of *entry* accrued to the remaindermen in this case. By the act of 1767, (Cobb's Digest, 559,) it is declared " that all writs

Sanford *vs.* Sanford.

of formedon in descender, formedon in remainder, and formedon in reverter, of any lands, tenements, hereditaments, or any other writ, suit, or action whatsoever, at any time hereafter to be sued or brought, by occasion or means of any title or cause heretofore accrued, happened, or fallen, or which may *hereafter* descend, happen or fall, shall be sued and taken within seven years next after the passing of this act, or after the title and cause of action shall or may descend or accrue to the same, and at no time after the said seven years, and that no person or persons that now hath or have, or which *hereafter* may have, *any* right or title of *entry* into any lands, tenements or hereditaments, shall at any time hereafter make *any* entry but within seven years next after the passing of this act, or after his or their right or title shall or may descend or accrue to the same, and in default thereof, such persons so *not entering,* and their heirs, shall be utterly excluded and disabled from such *entry* after to be made." This is an act for quieting of men's estates, and for avoiding of suits, and it will be noted that it not only bars the right of action within seven years from the time the cause of action accrues, but also bars the right of action when there is *any* right of *entry* into any lands, tenements, etc.; that is to say, if any person has *any* right of *entry* into any lands or tenements, he *must* bring his action within seven years from the time such right of *entry* accrued to him, or he will be barred thereafter. The only exceptions made by the statute are in favor of "infants, *feme coverts,* persons *non compos mentis,* imprisoned, or beyond seas," and such persons had three years after the removal of disabilities to bring suit, and not after. The right to *wait* until the death of the tenant for life before bringing suit when there had been a forfeiture of the life estate which entitled the remaindermen to *enter* upon the land, is not one of the exceptions contained in the statute, and whatever may have been the decisions of the courts in other states and other countries, as to the right of the remaindermen to *wait* until the death of the tenant for life when there had been a forfeiture of the life estate which entitled them to enter immediately

upon the land, such is not the policy of our law, as declared by the statutes of the state. If a person has *any* right of *entry* on land in this state, by forfeiture, or otherwise, he *must* bring his action to enforce that right within seven years, or the statute will interpose its bar, unless the plaintiff comes within some one of the exceptions mentioned in the statute.

The defendant, and those under whom he claims, have been in the adverse possession of the land in dispute for nearly forty years, under written evidence of title and claim of right, and though the plaintiffs may have been infants when their right of entry first accrued as remaindermen, yet more than three years had elapsed after becoming of age before the commencement of their action, one of them at the trial being fifty years of age, and the other thirty-nine years old. It is the declared policy of our law to quiet men's estates in their land by protecting their adverse possession under written evidence of title after the lapse of seven years, and such was the view taken by the majority of this court in *King vs. Leeves,* 36*th Georgia Reports,* 199. The principles of the common law hereinbefore cited, in relation to the forfeiture of the estate of the tenant for life, when he attempted to convey a greater estate in the land than he had, was recognized in that case as being applicable to deeds of conveyance of land by bargain and sale, that mode of conveyance being suited to the circumstances of the people of this state; that the attempted conveyance of the tenant for life of the entire estate in fee simple by deed of bargain and sale, was an injury done to the remaindermen, prejudicial to their interest, as recognized by the common law of England, though not for the same reasons in all respects as existed there; that when any person who had any right of entry upon any lands or tenements, was bound by the positive requirement of the statute of the state to bring his action within seven years from the time his right of entry accrued to him, or be forever barred; that persons claiming as remaindermen were not excepted from the operation of the statute until the death of the tenant for life, if their right to

enter on the land had accrued to them more than seven years before the death of the life tenant.

Such was, substantially, the ruling of the majority of the court in that case, and, in my judgment, that ruling was in accordance with the declared policy of our law in quieting and protecting men's estates in their land and in the possession thereof under written evidence of title, when such possession has been held *adversely* for more than seven years.

It was said on the argument of this case that the tenant for life could not convey a greater estate in the land than he had in it; that is true; he could not *legally* have done so, but it is because the tenant for life did *illegally* attempt to convey a greater estate than he had in the land to a stranger, to the injury and prejudice of the remaindermen, in violation of the deep-rooted principles of the common law, applicable to the circumstances of our people in this state and to their mode of conveying land here, that his life estate in the land became forfeited, and gave to the remaindermen the immediate right of entry thereon. The stranger to whom the land was conveyed in fee by the tenant for life, was under no obligation to preserve and protect it for the benefit of the remaindermen; he might render it worthless by improvident cultivation, and otherwise commit waste thereon, and that is a good and sufficient reason for the application of the principle of the common law in this state, which declares the life estate forfeited, and gives to the remaindermen the immediate right of entry on the land. The remaindermen are also injured and prejudiced by the attempted illegal conveyance of a fee simple title to the land by the tenant for life to a stranger, because it puts them to their action to recover possession of it, and the possession of the vendee of the entire estate, under written evidence of title, might ripen into a good statutory title.

The principle of the common law which forfeits the particular estate of the tenant for life when he attempts to convey the fee simple title to the land to a stranger, and gives to the remaindermen the immediate right of entry on the land, was a sound principle of law, and well suited to the circum-

stances of our people and to the conveyances of title to land recognized and of common use amongst them for a great number of years.   This principle of the common law, when construed in connection with the provisions of the act of 1767, was well calculated to protect our people in the possession of their land which they had honestly purchased and paid for, against just such claims as the one now before us.

Without stopping to inquire what were all the reasons for the adoption of this wise provision of the common law in England, it is quite sufficient to state, on the authority of Blackstone, that such *was* the common law at the time of our adopting statute in 1784, and that it was well suited to the circumstances of our people and to the mode prescribed for the conveyance of land in this state by deeds of bargain and sale.   The *mode* of conveying land in this state has nothing to do with the application of the common law principle here, that when a tenant for life attempts to convey in fee a greater estate in the land than he has in it that he thereby forfeits his life estate, and that the remaindermen may immediately enter thereon.   The question to be answered is, was it the common law at the time of our adopting statute, and was it suited to the circumstances of our people, and to *their* mode of conveying land in this state? and if not, why not?   The principle of the common law is, that if a particular tenant for life attempts to convey in fee to a stranger a greater interest in the land than he hath in it, he thereby forfeits his life estate, and the remaindermen may immediately enter thereon.   Why should not that principle of the common law apply to a life estate in land with remainder to A and B, created by our mode of conveyance by deed of bargain and sale, as well as to a life estate in land with remainder over, which is created by any other mode of conveyance creating a similar estate?   The principle of the common law is plain enough; the attempted conveyance by Sanford, the life tenant, of the fee simple estate in the land, to Gladdin, by a lawful deed of conveyance, is also plain enough; then, why did not that principle of the common law apply to that conveyance in this state and give

the right to the remaindermen to have entered on the land immediately thereafter, the particular estate of the life tenant being forfeited? The remaindermen having had the right to have immediately entered on the land after the conveyance thereof by Sanford, the life tenant, to Gladdin, the statute of limitations then of force would have barred that right of entry within seven years after such right of entry accrued to them unless they were under the disability of infancy, and if they were, then they were bound to have brought their action to enforce their right of entry within three years after the disability of infancy was removed, and having failed to do so they are forever barred by the stern provisions of the statute.

There is no such exception in the statute, as was claimed, giving to the plaintiffs the right of entry, and a right of action to enforce the same within seven years from the death of the tenant for life in 1870, who had forfeited his life estate in the land in 1835. The error is in assuming that the statute of 1767 makes an exception in favor of remaindermen who have an immediate right of entry on the land upon the forfeiture of the life estate by the life tenant, by postponing their right of entry thereon until the death of the life tenant, whereas, the statute makes no such exception, but declares in express terms that no person or persons, who have *any* right or title of entry into any lands, and who fail to do so within seven years, shall be thereafter barred. The statute makes no provision for remaindermen to *waive* their right of entry on the land on the forfeiture of the life estate therein by the tenant for life until his death and then have the right to enter, but on the contrary, the statute contemplates that all persons who have *any* right of entry into lands, either by forfeiture or otherwise, *must* do so within seven years, or be barred. The statute does not contemplate successive rights of entry which might accrue to any class of persons from time to time, for its declared policy was to quiet men's estates in their lands, and for avoiding suits, and therefore the words *any right of entry*, as used in the statute, are significant words as to the intention of the legislature. The express words of the statute

apply to remaindermen who have *any* right of entry into any lands, and bar that right of entry after seven years whether that right of entry accrued to them by forfeiture or otherwise, and bar their right of action of formedon in remainder, or of any other writ, to enforce that right of entry after seven years.

The conclusion, therefore, is, that by the common law at the time of our adopting statute, the attempted alienation of a tenant for life, of a greater estate in land than he had therein, by pretending to convey a fee simple title thereto to a stranger, was a forfeiture of his life estate in the land, and gave to the remaindermen the immediate right of entry thereon. Second, these living principles of the common law were suited to the circumstances of the people of this state, and were applicable to conveyances made by tenants for life of lands here, who attempted to convey a greater estate therein than they had, to a stranger, to the injury and prejudice of remaindermen, by deeds of bargain and sale, though not altogether for the same reasons which existed in Egland, especially in regard to the feudal tenures of that country. Third, as the remaindermen had the immediate right of entry on the land upon the forfeiture of the life estate by the tenant for life, they were bound to have entered thereon within seven years from the time that right of entry accrued to them, or within three years from the removal of the disability of infancy, and failing to do so their right of entry, as well as their right of action to enforce it, was barred by the act of 1767, as against the defendant, who, and those under whom he claims, have been in possession of the land for more than seven years under written evidence of title thereto, and claim of right to the entire fee simple estate in the land. I am, therefore, of the opinion that the judgment of the court below should be affirmed.