NUSSBAUN & DANNENBERG *vs.* EVANS, administrator.

A will provided as follows: The testator bequeathed certain personalty to his sons, expressly in fee simple; certain realty was also devised, of which they were to have the usufruct after majority, expressly for life, and at the death of each the lands thus devised to him were to be given to the children of each devisee and to the issue of such of his children as might then be dead, to be divided among them according to the statute of distributions; similar provisions were made for the daughters. It was provided that all the property bequeathed to testator's children should be kept together by his executor and executrix (his widow); that the plantation on which he resided should be used as the home of his family, and worked to the best advantage by the executors, until the time should arrive for the delivering of the legacies to each legatee; that all of the property not already bequeathed should be kept together and worked to the best advantage for the support of his wife and the support and education of his minor child en, until the youngest became of age or married, at which time the executors were directed, after appropriating a sufficiency for the support of the wife for life, to divide the balance of testator's estate among his issue, on the following basis: that is to say, each legatee should account for the value of the special legacies received, and in this division be equalized with each other, the land loaned to his sons and given to his daughters for life being charged to them respectively. No provision was made in case one of the devisees should die before marriage, or if there were no child, or the offspring of child in being at the death of the devisee; nor was there any residuary clause. The widow re-married, the youngest child became of age, and the estate was divided. A son died, leaving no child or descendants of children, and his creditors sought to. subject the land received by him:

*Held*, that upon the death of the son without children or the descendants of children, the land reverted to the estate of the testator, and was not subject to the debts of the son.

(*a.*) It is the policy of the legislation in this state to prevent entails, and at the same time to carry into effect the evident intention of parties, letting all the persons enjoy the benefits intended for them as far as possible, without violating settled rules of law.

December 21, 1883.

Wills. Legacies. Title. Estates. Before Judge CARS-WELL. Screven Superior Court. May Term, 1883.

Reported in the decision.

BLACK & DELL; R. O. LOVETT; J. D. ASHTON, by H. E. W. PALMER, for plaintiffs in error.

No appearance for defendant.

HALL, Justice.

Alexander Kemp died in 1859, leaving a widow and eight minor children, four sons and four daughters, and also quite a large estate, which was disposed of by his will.

To each of his sons he bequeathed certain personal property, to be placed in their possession when and as each attained his majority. This was a bequest expressly in fee simple, in the various items making this bequest of personalty; there was also a devise of realty, of which they were to have the usufruct after attaining majority, expressly for life; and at their respective deaths the lands thus devised to each of them were given to the children of each devisee, and to the issue of such or his children as might then be dead, to be divided among them according to the statute of distributions. Similar provision was made for each of the daughters, with the addition of securing the bequest to the sole and separate use of each of them, free from the debts, etc., of any husband with whom each of them might intermarry.

The eleventh item of the will directed that all the property therein bequeathed to his children should be kept together by his executors and executrix (who was his widow); that the plantation on which he resided should be used as the home of his family, and worked to the best advantage by the executors, until the times should respectively arrive for the legacies to be delivered to each of the legatees; that all the balance of the property not therein bequeathed should be kept together until the youngest daughter either married or became of age, and worked to the best advantage for his wife and children, and that the proceeds or annual income thereof should be appropriated to the proper education and support of his minor children,

and to the support of his wife, until the youngest child became of age, or married, at which time he directed his executors, after appropriating a sufficiency for the comfortable support of his wife during the remainder of her life, to divide the balance of his estate among his issue, on the following basis: that is to say, that each legatee is to account for the value of the special legacy bequeathed, at the time he received it, and was then to receive such further sum as would equalize the amount each received under the will; it being his purpose to give to each of his children an equal amount; and in thus equalizing their respective amounts, he directed that the lands loaned each of his sons, and given to each of his daughters, for life, should be charged to them respectively, at its fee simple value.

No provision is made by the will in case one of the devisees shall die before marriage, or where no child, or the offspring of child, is in being at the death of the devisee.    Nor is there any residuary bequest in the will. The wife was appointed guardian of the person of the minors, but no testamentary guardian of their property was appointed.    This was considered unnecessary by the testator, inasmuch as each devise and legacy was left in the hands of the executors, to be managed and controlled by them, until the legatees should attain majority.

Robert W. Kemp having arrived at age in 1875, the executors then delivered to him his specific bequest of land. The widow having married, and the youngest child having become twenty-one, the entire estate seems to have been distributed, in accordance with the will, by such of the executors as were then acting, others having been previously removed; and upon this distribution, the acting executors resigned their trust.    Robert W. Kemp, becoming involved, was sued by plaintiffs, together with his partner, and judgment was obtained against them in the superior court of Burke county, on the 28th day of November, 1881, on which execution issued, which was levied

on the land devised by the will of Alexander Kemp to the said R. W., on the 13th day of February, 1882. Evans having taken out letters of administration *ad colligendum* upon the testator's estate, interposed a claim to the land, on the 1st day of April, 1882, and shortly thereafter Robert W. Kemp died, never having married, and leaving no child or descendant of such child.

Upon this agreed state of facts, it was by consent submitted to the presiding judge to decide, without the intervention of a jury, whether or not the property levied on belonged to the defendant in *fi. fa.*, R. W. Kemp, and was subject thereto, or whether it reverted to and became part of the estate of Alexander Kemp. The court below took the latter view of the case, and ordered the levy dismissed, to which judgment plaintiffs excepted, and bring the case here for review.

Whatever interest R. W. Kemp had in the land at the time judgment was rendered, was evidently bound thereby, and was subject to be levied on. This seems to have been conceded on the hearing in the court below; the only question made there was whether Kemp held the land for life or in fee, and if the former, he being dead at the hearing, whether it was available to the plaintiffs further to prosecute the levy. We are of opinion that, under the act of 1821, Cobb's New Digest, §169, which was the law of force when the will of Alexander Kemp took effect, that a less estate than a fee being expressly limited, the court was not at liberty, by construction, to increase the estate into a fee, but was bound to disregard all technical rules, and give effect to the plain and manifest intention of the testator, which seems to have been lawful, inasmuch as there was no attempt to create an estate tail, the gift in remainder being limited to the immediate descendants of the devisee in being at the time of his death, or in case of the death of a child of the devisee in his lifetime leaving children, then to such children, who stood *in loco parentis* at the death of devisee. No indefinite failure of

issue was contemplated. The limitation was not too re-mote. While this, as we think, would have been the result without the act of 17th February, 1854 (Acts 1853-1854, p. 72), and which was likewise of force when this testator died, yet if there was doubt, it is removed by that statute, which provides that where property is limited over, so as to vest in some other person or persons after the death of the first taker, upon his dying without heirs, or dying without issue, or dying without leaving heirs, or dying without leaving issue, or on failure of issue, or other and equivalent terms, such limitations or terms shall be held and construed to mean a definite failure of issue; that is to say, a failure of issue or heirs at the time of the death of the first taker. The codifiers, combining these two acts, made of them §2248 of the Code, requiring the courts to give effect to the intention of the maker of the instrument as far as the same is lawful, notwithstanding any techni-cal rules, whenever that intention can be gathered from the instrument itself; and it is added to these provisions, if this cannot be done, then the court may hear parol evi-dence to ascertain the intention.

The policy of our legislation has been to prevent entails, where this was possible, and to carry into effect the evi-dent intention of parties to such conveyances, letting all the persons enjoy the benefits intended for them, so far as this could be done, without violating the settled rules of law against perpetuities. The interest of Robert W. Kemp in this estate ended with his life, and there being *in esse* no one to take in remainder, it necessarily reverted to the estate of the testator, and goes into the hands of his admin-istrator to be distributed among his heirs.

Judgment affirmed