## Ford *et al.* *vs.* Cook *et al.*

| | |
|---|---|
| 73 | 215 |
| 95 | 780 |
| 73 | 215 |
| 97 | 538 |
| 73 | 215 |
| 99 | 448 |
| 73 | 215 |
| 101 | 680 |
| 73 | 251 |
| 102 | 671 |
| 73 | 215 |
| 105 | 807 |
| 73 | 215 |
| 123 | 290 |

1. A testator made a will in 1856 and died in 1859. The thirteenth item contained the following provisions: "I will and bequeath to Caroline C. Cook, my daughter, twenty-five hundred dollars, with the following reductions, viz.: one lot of land (describing it) valued at five hundred dollars; also a negro girl named Nancy, valued at four hundred dollars; also reduction of notes and accounts that I hold against John H. Cook, her husband; said property and money to be free from the disposition of her husband, John H. Cook, and to be for her own separate benefit; and at her death to go to her children." By another item the testator appointed his executors trustees, "to hold in trust for me and in my name the property herein bequeathed to my daughters (naming them), and to hold the same in trust for them and their bodily heirs":

*Held*, that the will created an estate for life in the daughter of the testator, with remainder to her children living at her death.

2. The meagerness of the proof in this case leaves important questions in doubt.

3. The trustees appointed under the will above quoted were not trustees for the life tenant alone, but the bequest was in trust to the executors for the sole and separate use of the testator's daughter during her life, free from the disposition and control of her husband, and after her death it was to be held by them on like trusts for her children, and the trust was executory.

(a.) "Bodily heirs" in this will construed to mean children.

4. So far as the record shows to the contrary, there is still in being a trustee who holds the estate in remainder; the title is in him, and not in the remaindermen; suit should have been brought by him; and if prescription would have been a good defence against him, it would have been good against the remaindermen.

(*a.*) Where one having a life estate unincumbered with a trust, or incumbered with a trust which does not extend beyond the tenancy for life, sells and conveys the fee, prescription does not begin to run against the remaindermen, until the termination of the life estate. But where one holding land as trustee both for a life tenant and the remaindermen conveyed it as an individual to one who took without notice of the trust, and possession was delivered to the purchaser, his possession became adverse to the title of the trustee; and when a prescriptive title became perfect against him, it was also good against those whom he represented.

(*b.*) This case is distinguished from that of the *City Council of Augusta vs. Radcliffe*, 66 *Ga.*, 469, and from 67 *Ga.*, 264.

November 11, 1884.

Wills. Estates. Remainders. Trusts. Title. Pre scription. Before Judge HAMMOND. Henry Superior Court. April Term, 1884.

Reported in the decision.

G. W. BRYAN; W. T. DICKEN, for plaintiffs in error.

SPEAIRS & SIMMONS, for defendants.

HALL, Justice.

The plaintiffs in these suits are the children of Caroline C. Cook, who was the daughter of Silas Mosely. They claim as remaindermen, in virtue of certain bequests, as they allege, to their mother for life, contained in the 13th and 26th items of the will of Silas Mosely. The 13th item of the will, as follows:

"I will and bequeath to Caroline C. Cook, my daughter, twenty-five hundred dollars, with the following reductions, viz.: one lot of land in the eleventh district of the county" (Henry) "and state aforesaid, known by (91) ninety-one, containing two hundred and two and a half acres, more or less, valued at five hundred dollars; also a

negro girl named Nancy, valued at four hundred dollars; also, reduction of notes and accounts that I hold against John H. Cook, her husband; said property and money to be free from the disposition of her husband, John H. Cook, and to be for her own separate benefit, and at her death to go to her children.''

By the other item, the testator appoints his executors trustees to hold in trust for him and in his name the property bequeathed to his daughters, including Mrs. Cook, '' to hold the same in trust for them and their bodily heirs." The lot of land mentioned in the thirteenth item is that now in controversy. It was shown that the plaintiffs were the children of Mrs. Cook, living at her death. The case was submitted to the presiding judge by consent of both parties, to be determined by him both as to the matters of law and fact involved. He found for the plaintiffs, and the defendants excepted. Three questions are made here:

(1.) That by the terms of this will no life estate is vested in the mother of plaintiffs; that an estate tail is created thereby, which, under the law, vests an absolute estate in Mrs. Cook, the life tenant.

(2.) That the land in question was advanced as a provision by the testator, Silas Mosely, in his lifetime to his daughter, that title to the same, by reason of his marital right vested in her husband, under whom defendants claim; that the will does not convey, or attempt to convey, title to advancements made by the testator to his daughter, but only requires that they be accounted for out of the legacy given to her; that the pecuniary legacy of $2,500 to Mrs. Cook is a legacy upon condition that these advancements be accounted for; and that, even were the expressed intention of the testator otherwise, these advancements could be recalled and disposed of by the will only with the consent of the party to whom they were made.

(3.) That the defendants were in the peaceable, continuous, open, exclusive, notorious and adverse possession of the land under written evidence of title for more than seven years previous to the commencement of plaintiff's

suits, and had acquired thereby a perfect prescriptive title to the same.

1. So far as we can gather the intention of the testator from this very obscure and illy expressed will, we think he designed to give to the mother of the plaintiffs a life estate only in the property thereby conveyed, with re·mainder to the children living at her death. The will was executed in 1856, and took effect by the death of the testator three years later. Neither at its date, nor when it took effect, was such a thing as an estate tail by implication recognized by the laws of this state. The effect of our legislation of 1821, and that of 1854, was to forbid the presumption or implication of an estate tail; and where by the English rules of construction such an estate would have been created by implication, our statutes meant that a life estate should be vested in the first taker, with a remainder over in fee to his children and their descendants. Code, §§2250, 2251, and cases cited. See in connection *Id.*, §§2248, 2249, and *Nussbaum & Dannenberg vs. Evans, adm'r,* 71 *Ga.,* 753. So we think that there was no error in holding that these plaintiffs took in remainder after the death of their mother.

2. On account of the meagre and insufficient proof in this case, the next question presented is rendered some·what more difficult and perplexing. The record does not show by any direct evidence when the devisee and her husband took possession of the land in question, nor does it disclose under what understanding or arrangement the possession was taken; it leaves in doubt whether the land was in fact an advancement or only a temporary gift or loan. It is also questionable in which of these lights the testator himself regarded it; and it is more or less doubt·ful, from the terms of the will and other facts in proof, whether it was his intention to convey it by his will. From the above items of the will, standing alone, we would not be authorized to conclude that it was thereby conveyed, but taken in connection with a similar bequest in the 14th

item of the will, to his son, Josephus Mosely, and the cod-
icil altering that item, it would appear that, in testator's
view, the property previously given off to his children
was conveyed by his will.   In this codicil he states that
he had " willed " the land embraced in this last item to
his son, Josephus, valued at $1,400, and that he had since
sold it; he then substitutes for it other land, which he val-
ues at $400, and adds to that amount $1,000 in money.
This is a pretty strong indication, on the part of the testa-
tor, that he claimed the right to exercise full dominion and
control of the land he had advanced to this devisee.   Ben-
jamin Mosely testified on the trial of these cases that both
Cook and his wife claimed title to the land under the will
of Silas Mosely; that Cook, as the successor of the trustees
appointed by this will, received from them, as trustee,
the land.   He stated that Silas Mosely's children were set-
tled previous to his death on lands belonging to him, that
were situated in the vicinity of those on which he resided.
But he also states that John H. Cook resided on this land
at testator's death; how long he had resided on it, what
dominion or control he exercised over it, or what improve-
ments, if any, he put upon it, whether he paid rent for it,
or whether he recognized testator's title to it, does not
appear.   It is certain, however, that, without any apparent
change of possession or ownership so as to notify others
that the title was otherwise than the possession would in-
dicate, he, on the 29th day of September, sold and conveyed
this land in his own name and right, and not in any fidu-
ciary character, to the party from whom the defendants
derive their title, and that his feoffee took immediate pos-
session, and he and those claiming under him had been in
the continuous, uninterrupted, peaceable and adverse
possession of the premises for more than twenty years
previous to the commencement of these suits.   It is dis-
tinctly admitted by the agreed statement of facts, that
they were *bona fide* purchasers of the fee without actual

notice of the trust incumbering it or any other circumstance affecting their right thereto.

3. The defendants set up their prescriptive title, and this defence was overruled by the court, because the judge was of opinion that the trustees appointed by the 26th item of testator's will were trustees for the life tenant only, and not for the remaindermen, and that their power ceased when the life estate terminated. It is not clear to us that this was a proper interpretation of this clause of the will, when taken in connection with the 13th item and the other evidence in the case. We think these appointees were trustees for both parties, the remaindermen as well as the life tenants; that their powers did not end with the life estate, but that they had duties to perform to the remaindermen, most of whom, at the death of the life tenant, were minors. The trust was not fully executed by that event, but still remained executory. The language of this 26th item is peculiar ;—it appoints the executors of the will trustees, " to hold in trust for me " (the testator), " and in my name the property herein bequeathed to my daughters" (naming them), " and to hold the same in trust for them and their bodily heirs." Engrafting this trust upon the bequest contained in the 13th item, and treating the term "bodily heirs" as though it had been written "children," in which sense it was probably used, the item will then read: ' To my executors I give (the property mentioned), to hold in trust for me and in my name, and also to hold the same in trust for my daughter Caroline, for her own separate benefit, free from the disposition of her husband, and at her death to hold in trust for her children.' More formally and correctly expressed, this was a bequest in trust to the executors for the sole and separate use of the daughter during her life, free from the disposition and control of her husband, then it was to be held by them on like trusts for her children.

If any one thing is clear from the mass of confusion created by this will, it is the intention of its maker

to exclude from participation in his estate the husbands of his daughters and the wives of his sons. Wherever a bequest is made to a daughter, it is immediately followed by a legacy of ten dollars to her husband " to have as his own " and " to be disposed of as he may think proper," and where the bequest is to a son, this is immediately followed by a similar legacy of the same amount to the son's wife. This was done, doubtless, in deference to a popular, though unfounded notion, that it was essential to the validity of the will. According to this " crowner's quest law," every heir or supposed heir must be noticed in the will; a legacy of five dollars, or a shilling to buy a rope to hang himself with, to an heir, would be necessary to validate a testament, which, without it, would be invalid and inefficacious. To carry into full effect this cherished purpose to exclude from participation in his estate, except to the limited extent named in the will, any but his blood kin, this testator, in the case of daughters, was careful to appoint trustees for them during their lives, and when they died, for their children. To effect this object the trusts he created were necessarily executory.

From aught that appears to the contrary, there is still in being a trustee, who holds this estate in remainder; the title to it is in him and not in the remaindermen. This being the case, these actions should have been brought by him, and if a prescriptive title would have availed to defeat an action to which he was a party, it would have been equally available against them. It is conceded that where one, having a life estate unincumbered with a trust, or incumbered by a trust that does not extend beyond the tenancy for life, sells and conveys the fee, prescription does not begin to run against the remaindermen until the termination of the life estate, for in neither case have they a right of entry until the end of the term. See dissenting opinion of Walker, J., in *King vs. Leeves*, 36 *Ga.*, 206, and the opinions of Bleckley and Jackson, J. J., in *Sanford vs. Sanford*, 55 *Ga.*, 527,

which we think correctly laid down the law applicable to this question, and which was afterwards ruled by a full bench in a case where the life estate only was held in trust, *Bull et al. vs. Walker et al.*, 71 *Ga.*, 195, Estes, J., who presided in the place of Hall, J., who was disqualified, delivering the opinion.

While the rule, as established in these cases, was not questioned, it was insisted that the fact of title to the remainder being held in trust for them did not vary its application, and the case of the *City Council of Augusta vs. Radcliffe et al.*, 66 *Ga.*, 469, was relied on in support of the position. That case, while distinctly recognizing the rule that plaintiffs must have both the title and the right of entry or possession before they could bring the action, or before prescription would attach, yet, under its peculiar circumstances, held that the suit was good against that defence. There the defendant claimed title under the trust, and that its conveyance was a good execution of the power to sell as conferred by the deed, which claim was not allowed by the court; besides, its title was derived directly from the trustee as such, and not from one holding adversely to him and it was charged with full notice of the plaintiff's title. The defendants in these cases do not claim under the instrument creating this trust, nor do they derive title from the trustee. It is true their deed is from the same person who was acting as trustee, but it was from him as an individual, and not as a trustee; he did not deal with them in the latter character. It is not shown that they knew of the existence of the trust, nor is there in the evidence any fact or circumstance from which such knowledge could be implied. On the other hand, there is at least one prominent fact, that was quite notorious in the neighborhood, namely, the unbroken and continuous possession of the land by the feoffer of the defendants, both before and after the testator's death, that would lead to an opposite conclusion.

In an early case decided by this court, *Paschal vs.*

*Davis*, 3 Kelly, 256, 262, 263, it was held that, where an administratrix, in her individual ·capacity, sold a negro belonging to the estate of an intestate and delivered possession .to the purchaser, his possession from its commencement became adverse to the title of the legal representative of the intestate's estate, and that the statute of limitations would protect him, he having been in possession for the time thereby prescribed. The party conveying and parting with the possession of the land and the trustee in whom was vested the entire title, and whose duty it was to protect it for the benefit of all, and not a portion of the *cestuis que trust*, was one and the same person, and therefore necessarily had notice of the adverse character of the defendants' claim and holding, and could have brought this action at any time within the period prescribed by law, and having failed so to do, he, as well as those he represented, are now barred from prosecuting these suits. This seems to us to be the result of the authorities upon this subject. 48 *Ga* ,339 ; 51 *Id.*, 139 ; 55 *Id.*, 25. We have endeavored to show that the *City Council of Augusta vs. Radcliffe et al.* does not conflict with this view, and are of the opinion that the case cited from 67 *Ga.*, 264, does not. Upon this ground alone, we remand this case.

Judgment reversed.