EWING *et al. vs.* SHROPSHIRE, next friend.

1. A conveyance by deed of gift from a father to his daughter, executed since the adoption of the code, to-wit, in March, 1877, to which the father and daughter were the only parties, and by which he conveyed certain described realty to her, "and the lawful heirs of her body begotten, to her and their sole and separate use, and free from all debts, liabilities and contracts of her present or any future husband," to have and to hold unto her "and her heirs . . . to her and them, and their own proper use, benefit and behoof, forever in fee simple," and warranting title to her "and her heirs and their assigns," passed the absolute fee to the daughter alone; and her child, though in life at the time the deed was executed, acquired no estate in the premises, either as tenant in common or as donee in remainder.

2. The case of *Whatley vs. Barker,* and *Craig vs. Ambrose,* decided at October term, 1887, in so far as they involve a construction of section 2250 of the code, reviewed and affirmed.

July 11, 1888.

Deeds. Titles. Estates. Tenants in common. Remainders. Before Judge MADDOX. Floyd county. At chambers, September 10, 1887.

This was a bill to restrain a contemplated sale of land, conveyed to the complainant's mother by the deed mentioned in the decision; complainant claiming that she was a tenant in common with her mother, being an only child. The answer set up that the title was in complainant's mother, and that complainant had no interest in the property. Upon the hearing, the chancellor enjoined the defendants from selling the land, and they excepted.

HALSTED SMITH, for plaintiffs in error.

ALEXANDER & WRIGHT, *contra.*

BLECKLEY, Chief Justice.

This deed was made in 1877, and to determine its effect requires a construction of certain sections, especially section 2250, of the code. The conveyance was by deed of gift, to which the father was party of the first part, and the daughter party of the second part. He conveyed to her " and the lawful heirs of her body begotten, to her and their sole and separate use, and free from all debts, liabilities and contracts of her present or any future husband," to have and to hold unto her " and her heirs . . . to her and them, and their own proper use, benefit and behoof forever in fee simple "; and warranted title to her, " and her heirs and their assigns." Had the deed omitted the words, " the lawful heirs of her body begotten," and used in lieu thereof the words " her heirs," there could have been no question that an absolute fee simple estate would have vested in the daughter alone; that is, she would have been sole tenant in fee simple as to the whole of the premises conveyed. With this supposed modification, the entire instrument would have been consistent with itself throughout; not a word would have presented any conflict, literal or legal, with any other word or collection of words. The whole problem before us, therefore, results from the insertion of the phrase, " the lawful heirs of her body begotten"; and so we set out with the certainty that the gift is either to the daughter alone, or to her and the heirs of her body. That the heirs are to be lawful and begotten, adds nothing substantial to their description, since to be heirs of the body at all they must have both of these attributes. Legally speaking, the precise equivalent of " the lawful heirs of her body begotten" is " heirs of her body." The more extended description only serves to show that the donor consciously intended to restrict the range of " heirs " to such persons as the law embraces in the terms " heirs of the body."

We thus reach the final form of the question which we have to answer : What estate, under the code, is created by a gift to a woman (daughter of the donor) and the heirs of her body, she having a child in being at the time of the execution and delivery of the conveyance? Is it an absolute fee solely in her, or a tenancy in common with her child (joint tenancy being abolished by statute), or an estate for life in her, with remainder in fee to the child?

"An absolute or fee simple estate is one in which the owner is entitled to the entire property, with unconditional power of disposition during his life, and descending to his heirs and legal representatives upon his death intestate." Code, §2246. "The word 'heirs,' or its equivalent, is not necessary to create an absolute estate; but every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance. If a less estate is expressly limited, the courts shall not, by construction, increase such estate into a fee, but disregarding all technical rules, shall give effect to the intention of the maker of the instrument, as far as the same is lawful, if the same can be gathered from its contents; and if not, in such case the court may hear parol evidence to prove the intention." *Id.* §2248. "Limitations over to 'heirs,' 'heirs of the body,' 'lineal heirs,' 'lawful heirs,' 'issue,' or words of similar import, shall be held to mean children, whether the parents be alive or dead; and under such words children, and the descendants of deceased children by representation, in being at the time of the vesting of the estate, shall take." *Id.* §2249. "Estates tail are prohibited and abolished in this State. *Gifts or grants to one and the heirs of his body*, or his heirs male or heirs female, or his heirs by a particular person, or his children or his issue, *convey an absolute fee.* Estates tail being illegal, the law will never presume or imply such an estate. Limitations which, by the English rules of construction, would create an estate tail by implication, in this State shall give a life estate to the first taker,

with remainder over in fee to his children and their descendants, as above provided; and if none are living at the time of his death, remainder over in fee to the beneficiaries intended by the maker of the instrument." *Id.* §2250. " All limitations over after the death of the first taker, upon his dying without heirs, or dying without issue, or dying without leaving heirs or issue, or on failure of issue, or other and equivalent terms, shall be construed to mean a failure of heirs or issue at the time of the death of the first taker, and shall convey the estate in the manner prescribed in section 2250." *Id.* §2251.

Section 2246, in what we have quoted from it, though new as statute law, makes no change in the definition or the incidents of an absolute or fee simple estate. Section 2248 is a reproduction of the act of 1821 (Cobb's Dig., 169,) in so far as it declares words of inheritance, such as " heirs," etc., needless to create an absolute estate, and makes every conveyance, properly executed, have that effect, unless a less estate is therein mentioned and limited. The rest of the section is new as statute law, and as a *universal* rule, new in the law generally; for, prior to the code, there was no inhibition, *in all cases*, against enlarging a less estate expressly limited, into a fee by construction ; nor any absolute requirement to disregard technical rules in order to arrive at intention; nor was the door so wide open to the admission of parol evidence to clear obscurities and explain patent ambiguities. Section 2248 is wholly new, and works a radical change in the prior law by making certain words and phrases, or other like words, always import purchase and not limitation when used in *limitations over*. According to the rule in Shelly's case, such words, so used, would generally be taken as words of limitation and not of purchase. The code totally extirpates that celebrated rule, and establishes the very reverse of its doctrine, as to all limitations over. *Wilkerson vs. Clark* (this term), *ante*, p. 367.

What is a " limitation over " ?   In a large sense, and no

doubt in the sense intended by the code, it includes any estate in the same property created or contemplated by the conveyance to be enjoyed after the first estate granted expires or is exhausted. Thus in a gift to A for life, remainder to the heirs of his body, the remainder is "a limitation over" to the heirs of the body, and under this section of the code, the children of A and the descendants of deceased children would take the remainder as purchasers. And the same persons would take the same estate in the same capacity were the remainder limited to heirs, lineal heirs, lawful heirs, issue, or the like. To any possible application of the rule in Shelly's case to such a conveyance there is a double obstacle; first, by section 2248, which enjoins that technical rules be disregarded, and inhibits the enlargement of the estate granted to A into a fee by construction, a less estate, to-wit, one for life, being mentioned and limited; and secondly, by the universal rule laid down in section 2249, that in limitations over, any description, such as heirs, etc., which embraces children, will enable them to take, if they are in being at the time of the vesting of the estate.

Instances more strict of "limitation over," as the phrase is commonly used, are the following: A gift or grant to A for life, and upon failure of issue or heirs of his body, then to B in fee. Or a devise to A forever, but if he should die without issue or heirs of his body, to B in fee. These instances might be multiplied and varied indefinitely. In both these examples the idea of substitution, as well as succession, is embraced, that is, B is not only to take, if at all, after the first estate granted, or the interest therein of the first taker is exhausted, but in lieu of other persons (issue or heirs of the body) who would take or continue to hold (it matters not whether by purchase or by descent) were they in being. It may be that in a first or any *single* limitation over, the element of substitution is essential in rigid propriety of legal language, but we are well satisfied that the code, in the section under consideration, uses

the phrase in the broad sense, that which embraces successive ownership and possession of the same property, whether brought about by substitution, or by immediate and absolute appointment without condition or alternative, as in the example first suggested; that of an estate for life in A, with remainder to the heirs of his body. When two or more estates of freehold in the same property are granted by the same conveyance to be enjoyed successively, or one in lieu of another, each of them, except the first, is a limitation over.

Section 2251 is almost a literal reproduction of the act of February, 1854, (acts of 1853–4, p. 72,) requiring that certain phrases, or any terms equivalent thereto, in limitations over, be construed to import always a definite, and not an indefinite, failure of heirs or issue—a failure at the death of the first taker. The conclusion of the section, providing that such limitations shall convey the estate in the manner prescribed in section 2250, is new matter, the act of 1854 being silent as to where the estate shall go.

We are ready now to enter upon the analysis and exposition of this section, to-wit, §2250. Its subject-matter is estates tail, and estates tail only, together with the incidents under the order of things, established partly by prior legislation and partly by the changes introduced by the code itself, of attempts to create them, or of the use of formulas in conveyancing which would create them in England, either expressly or by implication. The first clause of the section declares them abrogated and abolished. This was done both by constitution and by statute before the close of the last century. The next clause, instead of referring to the statute *de donis*, as a criterion or standard, as did the act of 1821, (Cobb's Dig. 169,) annexes the consequence prescribed by that act, namely, the creation of an absolute fee to " gifts or grants to one and the heirs of his body, or his heirs male or heirs female, or his heirs by a particular person, or his children, or his issue." Though this enumeration of words may comprehend some not

found in the statute *de donis*, (see *Harris vs. Smith*, 16 *Ga.*
550, and the dissenting opinion of LUMPKIN, J., in *Gray
vs. Gray*, 20 *Ga.* 827, 832,) the codifiers doubtless consid-
ered them, when used in the manner indicated, that is, in
immediate connection with the first or only estate granted,
and not by way of limitation over, as words appropriate to
the creation of an estate tail *express*.   There could cer-
tainly be no doubt as to some of them being of that na-
ture, and the freest of them all from doubt are the words
" heirs of the body."    Accordingly, these words are in-
serted first in the clause devoted to estates tail express,
and the others follow as having the like nature and effect.
It is true that estates tail express are not specifically men-
tioned; but that the codifiers contemplated, first, all es-
tates tail, then those express, and then those implied, is
beyond question.   What they declared as to all was that
they are abolished, and what they declared as to those
which they considered express, as distinguished from im-
plied, was, that being abolished, the recited forms appro-
priate to their creation convey an absolute fee.   They thus
left unchanged the prior law, as declared by the act of
1821, so far as estates tail express are concerned, and at
the same time made their work far more definite and spe-
cific than was that act by enumerating the expressions
which, when such estates were legal, would serve to cre-
ate them.   They had various reasons, we may conjecture,
for doing this instead of referring to the statute *de donis*
as the former act had done.   One was to adapt the clause
to unprofessional readers; another was to shun the contro-
versy as to whether the statute *de donis* is the legitimate
source of all estates tail, or of such only as are express.
See the discussion in *Gray vs. Gray*, 20 *Ga.* 804, in which
case Mr. Cobb, who drafted all the real estate law of the
code, was of counsel for the losing party.   He moulded
the code in its provisions touching estates tail so as to con-
form more nearly to the views of the dissenting judge than
to those of the majority of the court as regards both the

statute *de donis* and the act of 1821 in its application thereto. Another reason was the double construction of this latter act, and the desire to mark clearly the distinction between the two classes of entails, express and implied, to both of which the act had in several instances been applied with one and the same result. By setting down the exact forms deemed appropriate to estates tail express, all other forms recognized by the English courts could be characterized as estates tail implied, under the subsequent clauses of the section, which are now in order for consideration.

" Estates tail being illegal, the law will never presume or imply such an estate." This clause, taken literally, is as old in our law, though not, prior to the code, inserted in any statute, as the abolition of entails by the constitution of 1777. But if it means, as it probably does, that the law will not imply an intention to create an estate tail, even when such intention can be ascertained by clear inference, it is either new law or a somewhat doubtful exposition of the old.

" Limitations which by the English rules of construction would create an estate tail by implication, in this State shall give a life estate to the first taker, with remainder over in fee to his children and their descendants as above provided" (that is, as provided in §2249) ; " and if none are living at the time of his death, remainder over in fee to the beneficiaries intended by the maker of the instrument." This carving up of any and all estates tail by implication into a particular estate and a remainder is wholly new. A large part of the limitations here spoken of were embraced in the act of 1854, now embodied in section 2251 of the code, but certainly not all. The universality here established is, however, consistent with, indeed a necessary incident of, the two sections 2249 and 2251 taken together, for the materials to which these two sections, one or both, apply, exhaust, I apprehend, the whole stock in trade of estates tail by implication. I do

not suggest by any means that all the materials upon which they are capable of acting would furnish matter to the English courts for implying an estate tail, but only that matter outside of them would either be an estate tail express or none at all. .

We have seen already what · the code provides concerning all estates tail and concerning estates tail express; we now see its treatment of estates tail implied; it resolves them into an estate for life and a remainder over in behalf of children or their descendants alive at the time of the vesting of the estate, and if none, then a remainder over in behalf of others, if any, appointed to take. It will be noticed that the first, as well as the second, of these alternative remainders is called a remainder " over," which fact tends to support the construction above advanced as to the code-meaning of "limitations over."

Finally, it may be observed that the scheme of the code seems to be to leave what it deems forms of entail express just as it found them under the uniform construction of the act of 1821, but to disengage from that act all other forms, and annex to them the invariable consequence of a life estate with remainder over.

We now return to the clause touching express entails to subject it to a still more minute and critical examination. " Gifts or grants to one and the heirs of his body, or his heirs male or heirs female, or his heirs by a particular person, or his children, or his issue, convey an absolute fee." According to the English law, all the words here enumerated are primarily words of entail except " children," which is primarily a word of purchase. The other words when used alone are not ambiguous, this one is; and its introduction into the clause with the others upon an apparent equality, as though it were as free as they from ambiguity, is what makes the chief difficulty of construction. According to Wilde's case, when this word is coupled in the gift or grant immediately with the ancestor, as in the language of the code, it imports limitation, and conse-

quently an estate tail, if there be no child or children *in esse* at the time of the conveyance; but otherwise, even when so connected, it is a word of purchase. Its real quality in any given instance, where it is used alone in such connection, depends upon an extrinsic fact, to wit, the existence or non-existence at the time of the gift or grant of persons, or at least of a person to whom the word can properly be applied. The code betrays not the slightest consciousness of this double or conditional signification of the term, but seems to treat it as if its meaning were as fixed and invariable as that of the words with which it is associated. By reason of this ambiguity in one of its terms, the whole clause is apparently ambiguous. Four possible constructions are open to us, one of which has to be adopted. The first is to consider all the words unchanged; that is, as left to bear their former signification respectively, the words " children " with, and the others without, ambiguity. The second is to consider them all changed except " children," leaving that word ambiguous, and treating the change as simply rendering the other terms equally ambiguous, and equally subject to explanation by extrinsic evidence. The third is to consider them all changed, the change consisting in freeing the word " children " from ambiguity, making it always a word of purchase, and conforming the others to it by reversing their technical meaning and making them likewise always words of purchase. The fourth is to consider the word " children " as changed by freeing it from ambiguity, conforming it to the other words, and making it equally with them always a word of limitation. The first, involving no change, involves no subordination; the second would subordinate the many to the one; the third would do the same; and the fourth would subordinate the one to the many. They would all serve equally well to hinder entailment; for under any of them the absolute fee would, according to the code, be conveyed, and no contingent reversion be left in the donor or his heirs, without which reversion no estate tail has ever

been or ever can be created. It was in great part to protect and preserve this reversion that the statute *de donis*, in which estates tail had their origin, was passed. The distinction, one from another, amongst these various constructions has no influence in conveying the fee, but only in ascertaining ·to whom it is conveyed. That no part of the fee abides in the donor or grantor is as certain as express statutory declaration can make it. But the code is silent as to who takes the fee, and hence the importance, and· the only importance, of a correct discrimination amongst the possible constructions above enumerated. The first and fourth would each, in the present case, put the fee solely in the daughter; the second or third, in her and her child as tenants in common, or else would divide it into an estate in her for life, with remainder to her child. Whether the tenancy in common or the remainder would open to admit after-born children, might also be a question were the facts of the case wide enough to present it.

In discussing briefly each of the four constructions, we shall treat them, not in the direct, but in the inverse order to that in which they have been numbered.

The fourth we reject, because to make children always a word of limitation would be not only to abrogate the prior law in a most important particular, but to depart in this clause from all the tendencies and analogies found elsewhere in the code. Had the codifiers intended a change so radical, they would have made it expressly, and not left it to be inferred. We see that such was their practice in treating both of estates tail implied and limitations over generally. Then why, if they contemplated this change also, were they less explicit in dealing with estates tail express? In so far as they have anywhere attached a restricted sense to any one word or phrase importing offspring, they have made it conform to children as a word of purchase and not as a word of limitation. Their object has been to enlarge and enrich the vocabulary of purchase, and that only. They have not in a sin-

gle instance, outside of the clause we are construing, made by new enactment anything signifying limitation which had not that for its primary meaning before. And that they took the key-word of purchase, the best general word of purchase in the whole legal vocabulary in this clause, and converted it silently into one of limitation exclusively, so that a man can no longer give or bequeath to his wife and children property in common by naming his wife, and simply designating his children as such, is to us incredible. We think that since the code, the same as before, a gift or grant to one and his or her children, there being children then in *esse*, will convey an absolute fee, not to the parent alone, but to the parent and children in common. See *Chess–Carley Co. vs. Purtell*, 74 *Ga.* 467. We are satisfied that " children " is now as broadly and generally a word of purchase as it ever was, and that when the extrinsic condition formerly required, namely the existence of children or a child, is present, it is no less a word of purchase touching the first or only estate granted, than in respect to limitations over. The third construction, that which would make the enumerated words associated with "children" in this clause words of purchase exclusively, and thus reverse their primary signification in the law, is rejected for the sufficient reason (not to search for others) that the two generic forms embraced in these associated words, to-wit, " heirs of the body " and " issue," are both treated in section 2249, and there made to serve as words of purchase not in conveyances generally, but in " limitations over." That the codifiers restricted their new dictionary as to these terms to limitations over, is evidence that they did not intend to interfere with their previous statutory signification as words of limitation when used elsewhere than in limitations over. Had they wished to convert them wholly into words of purchase and depose them entirely as words of limitation, they would have said so, either in section 2249 or elsewhere. Their complete silence in this respect, though they fully revealed their purpose as to

limitations over, is cogently suggestive of the inference that they had no intention concerning them more comprehensive than what they expressed. The act of 1821 (*supra*) had already virtually prescribed the force of these words, making them, in effect, equivalent to the word "heirs" generally, and the code would not, without some explanation, have so closely followed that act in the clause we are considering, had it contemplated so deep a change as the complete conversion of all words of entail into words of purchase. I say all words of entail, for after the conversion of the root forms "heirs of the body" and "issue," especially the former, there would be no reason for sparing any of the derivative forms, such as "heirs male," etc.

The second construction, that which would render the associated words equally ambiguous with the word "children," and suffer their ambiguity to be cleared in the same way, to-wit, by resort to extrinsic evidence to ascertain whether children were in *esse* or not at the date of the gift or grant, has much to recommend it for enactment into law by the legislature, but we think the true sense of the code would not be arrived at by adopting it. We must remember that the section of the code now under review has for its subject-matter estates tail, and all of the enumerated words, including "children," are, without any change in them whatever, words of entailment, the only difference being that sometimes "children" is not so, but the others when used alone are of that nature invariably. In the clause we are considering, all the words are treated as belonging to one and the same class, the class being that to which they belong as words of entail. The relation of the word children to any other class is wholly out of view, and thus, with reference to the purpose in hand, which is to declare the effect of words of entail, this word is as much one of entail, and as free from ambiguity, as any of the others. Before it can be a word of entail at all, it has already lost its significance in the given instance as a word of purchase, and with that gone it is no less a

word of entail than the others. The clause deals with it, as with them, exclusively as a word of entail, and as such it always means the same thing just as they do, and thus all the words are upon an exact equality, and so the clause treats them. Once ascertain that the word " children," as used in the given instance, is not a word of entail, but is a word of purchase, and it is not, in that instance, within the purview of the clause. It comes within the clause only when it comes within the class to which the clause relates. If being a word of purchase in the given instance keeps it out of the class, the same reason keeps it out of the clause. One word with two meanings is equivalent to two distinct words; it is, in substance, two words with the same form. To illustrate this, let " children " as a word of purchase be represented by $a$, and as a word of entail let it be represented by $b$; it is only when the word is the equivalent of $b$ that the clause embraces it or has anything to do with it. When it is the equivalent of $a$, the clause which speaks alone of words of entail, and is silent as to words of purchase, has no application whatever to it. This interpretation makes the clause consistent both with itself and with the prior law, and does this without either freeing the word " children " from its ambiguity or causing the other words to partake of that ambiguity. It simply treats all the words as alike unambiguous as words of entail, and this they undoubtedly are. Once ascertain that they are words of entail, and there is no difference in their certainty and no reason for difference in their effect.

We now see that any ambiguity in the word " children," which occurs to the mind in reading the clause, results from connecting the meaning of the word outside of the clause with that which is inside. The moment we cease to do this, the moment we confine our attention to the word as a word of entail, the ambiguity of the word, though still existing in the law as a whole, disappears from the clause and ceases to disturb it. As one of entail, the word has but a single meaning, and that alone is within the

clause; consequently the clause, though apparently am-
biguous, is not really so, but is wholly free from ambiguity.

The scheme of the code with regard to words of entail
pure and simple, used as such, unqualified by concomitant
or explanatory terms, is briefly this : In the examples
enumerated in this clause and in them only, they are words
of limitation, and as our law recognizes but one species of
inheritance, that of heirs general, they pass an absolute
fee.    All other instances of their use, the code treats as
limitations over, and converts the words of entail into
words of purchase.

The first construction, that which treats all the words
as unchanged by the code when they are all words of en-
tail, and any them are used as in the examples set out in
this clause, is the only one left for our adoption.    To it we
are hedged in by our rejection of all the other construc-
tions, and by the reasons assigned for their rejection.    And
we adopt it, not with hesitation or reluctance, but with
thorough conviction of its soundness.    To look at words at
all as words of entail, they have to be regarded as words
of limitation ; for words of purchase, as such, are the re-
verse of words of entail, and no estate tail ever was or
could be created by their use.    It is immaterial that the
same word or words may be sometimes the one and some-
times the other, for when they are considered exclusively
in the one character, they are as different from what they
are in the other as they would be if they were different
words altogether.    We remark again, for the fact cannot
be too much emphasized, that in the clause we are con-
struing the code deals with the enumerated words solely
as words of entail, and declares their effect, as such, when
used in the manner indicated in the examples which the
clause presents.    It does not undertake to make them
more or less words of entail when so used than they were
before, nor does it, as we think, intend to vary their effect
in any respect from what it was before under the act of
1821 (*supra*).    Although the clause stops with the declara-

tion that an absolute fee is conveyed without stating expressly to whom it is conveyed or in whom it vests, we think the obvious meaning is that the absolute fee vests just where the estate tail would vest were the latter lawful, and were the former not substituted by the law in its place, to-wit, in the first taker. Words of purchase can introduce into a conveyance any number of persons for the estate to vest in immediately, but words of limitation can introduce none in whom it can ever vest save by inheritance or descent. The first tenant in tail constituted by the conveyance has always taken the whole fee tail, just as a sole tenant in fee constituted by the conveyance takes the whole fee simple. Under words of purchase, children may take either with or after the parent; but under words of limitation, they cannot take with, but must take after, or not at all. This excludes them from sharing in the fee with the parent as tenants in common, and also from taking a vested interest, or indeed even a contingent interest, by way of remainder, words of purchase being necessary to create in behalf of children a remainder, vested or contingent, as well as a tenancy in common. We thus perceive that it was wholly needless for the code to point out expressly in whom the fee would vest, since it follows inevitably from the nature of words of entail, as from all words of limitation, that by virtue of them no interest whatever in the fee could vest presently in heirs of the body, heirs male or female, heirs by a particular person, children or issue, and consequently that for the conveyance to pass an absolute fee at all, it must pass the same to the parent, the first taker. This view accords with the letter of the act of 1821 (*supra*), which as to all conveyances expressed in such terms as that the same would have passed an estate tail in real property by the statute *de donis*, provides that they " be held and construed to vest in the person or persons to whom the same may be made or executed an absolute unconditional fee imple estate." This act has always been construed as

meaning the first takers, that is the parents from whom the issue, etc. were to spring, and as excluding such issue from any participation in the estate otherwise than through inheritance as heirs general. We have no doubt that the code intends to render, and does render substantially, the meaning and purport of what we have quoted from this act; restricting the same, however, to the enumerated forms of entail embraced in the clause under examination. As to these, comprehending all the instances of express entailment which they recognized, the codifiers found the law as they wished to leave it, though touching estates tail by implication the act was not adapted to their design. We think that as to estates tail express, the act and the code are one and the same.

It follows that the daughter of the donor, and she alone, took an absolute fee in the premises now in controversy, unless there are in the deed other words by which "the lawful heirs of her body begotten" are converted into words of purchase, and none such appear. Indeed, taking the whole deed together, it seems to have been the intention of the draftsman to abide by the code, and create the very estate in the daughter which the code contemplates as the result of such an instrument, to-wit, an estate in fee simple. It seems impossible not to hold that the conveyance is either to her and her heirs in fee simple, or to her and the heirs of her body in fee simple, and in either case she takes by it an absolute fee.

2. This case was first argued not long after *Whatley vs. Barker*, 79 *Ga.* 790, and *Craig vs. Ambrose*, 80 *Ga.* 134 (*ante*), were decided, and on our own motion we ordered a second argument, granting permission to review those cases. The second argument was able and exhaustive, and even after that we took ample time to examine and re-examine the question before making up our decision. The result of our deliberation is embodied in the foregoing opinion, and we adhere confidently to *Whatley vs. Barker* and *Craig vs. Ambrose*, both of them, as cases well and

correctly decided, though we do not cite them now as authority, for we had them on trial when under review quite as much as the case immediately in hand.   Prior to them section 2250 of the code had, so far as we know, been but once referred to on the construction of any instrument made after the code went into effect.   This was in *Gibson vs. Hardaway*, 68 *Ga.* 370, in which, had the concluding clause of §2251 also been noticed and applied, the ruling might have been that the effect of the devise was to create a life estate, with remainder to the children.   The section is cited in *Butler vs. Ralston*, 69 *Ga.* .485; *Johnson vs. Sirmans*, *Id.* 617;  *Ford vs. Cook*, 73 *Ga.* 218, and *Gaboury vs. McGovern*, 74 *Ga.* 145, in each of which the instrument construed antedated the code, though in one of them, *Johnson vs. Sirmans*, as reported, the time of execution does not appear.   It did appear from the record.

The chancellor having, in the present case, granted the injunction prayed for, thereby holding that the daughter was not sole owner of the premises in fee, his decision was erroneous.

Judgment reversed.