## COLE et al. v. OGG.

*D. E. Griffin* and *Robert B. Blackburn,* for plaintiffs in error. *Smith & Smith,* contra.

Beck, Presiding Justice. An application to register land was brought by Elton E. Ogg under the land-registration act. Code, of 1933, § 60-101 et seq. Mamie Gene Cole .et al. intervened and asked that the title be registered in their names. The examiner found that the applicant had a fee-simple title. The judge affirmed this ruling, and the intervenors excepted. The only question in the case is on construction of the will of Mary Wood. All the parties claim under that will, the defendant in error under a warranty deed from J. C. Wood, a son of Mary Wood and a legatee named in her will, and the plaintiffs in error as children and grandchildren of deceased brothers and sisters of Mary Wood. Mary Wood died leaving two sons, J. C. and B. A. Wood, and two grandsons, B. S. and T. L. Wood, sons of a deceased son. All of these except J. C. Wood have now died without issue, leaving him their sole heir at law, and all his interest has been conveyed to the defendant in error. The plaintiffs in error are all of the children and grandchildren of deceased brothers and sisters of Mary Wood. The material parts of the will of Mary Wood are as follows:

"Item third. I give, bequeath, and devise to my son, J. C. Wood, the following property, to wit: All of lots of land numbers thirty-one (31), thirty (30), and thirty-four (34), in the eleventh

(11th) district of said county, containing each two hundred two and one half (202-½) acres, more or less [the land involved in this case]; also the following personal property, to wit: one sorrel mare with bald face and stocking legs, named Claud, and one bed and bedstead and bed furnishings. Subject to the limitations hereinafter stated.

"Item twelfth. It is my will and I hereby direct that all of the property herein given, bequeathed, and devised to the beneficiaries of this my last will and testament, shall hold the same to themselves and their bodily heirs, without the same in any manner being subject to the debts or contracts of the said beneficiaries or either of them. And that the property herein given, bequeathed, and devised to the beneficiaries of this my last will and testament shall in no manner sell or encumber the same during their lifetime, and that the same shall descend to their bodily heirs only.

"Item thirteenth. In the event of the death of the said B. A. Wood or the said J. C. Wood, or the death of the said B. S. Wood and T. L. Wood without bodily heirs, then and in that event it is my desire, and the same is hereby made my will, that the property herein given, bequeathed, and devised to the said beneficiary that may so die shall revert to and be the property of the survivors among the beneficiaries of this my last will and testament as designated in items two (2), three (3), and four (4) of this my last will and testament, it being my desire and will that all of the property herein given, bequeathed, and devised shall be and remain in the aforementioned beneficiaries of this my last will and testament and their bodily heirs only, subject to the limitations herein stated.

"Item fourteenth. In the event that said B. A. Wood and the said J. C. Wood and the said B. S. Wood and T. L. Wood shall all die leaving no bodily heirs, then and in that event it is my desire, and the same is hereby made my will, that all of my property herein devised, given, and bequeathed shall go to my heirs according to the laws of distribution of the State of Georgia at this time."

The examiner was of the opinion that the will under construction involved an attempt to create an express fee tail, and that this, under section 3661 of the Code of 1910, gave an absolute indefeasible fee-simple title to J. C. Wood, the first taker, and that the applicant derived title from J. C. Wood, and consequently had a fee-simple title; and the judgment of the court was in accordance with this

view. In *Allen* v. *Trust Company of Georgia,* 147 *Ga.* 739 (95 S. E. 288), the will there in question, in item 2, provided: "I hereby declare and do by this instrument constitute my beloved children, viz., Annie Louise and Paul Ryan, my legal and sole heirs, they to receive equally the entire benefit of my estate." And item 6 provided: "I desire, and by this clause most positively direct, that under no circumstances shall my nephews [naming them], or any of their issue, receive the slightest benefit of my estate; only shall my children and the heirs of their body. Should it happen that my children should die, and that without issue, and there be no heir of mine remaining, then I direct that the property of my estate shall be kept up as formerly; and after paying fixed expenditures, the remainder of the proceeds shall be applied to fitting up and maintaining a room in some of the eleemosynary institutions, such as the Presbyterian Hospital, and others of like character. Said room to be known as the Frank T. Ryan Room." This court held, "that the children of the testator were vested with a fee-simple title to the property in controversy, under the provisions of Civil Code section 3661. Therefore Annie Louise Westhoff, who survived her two brothers and inherited their share of the estate, at the time of her death held the entire residuum as a fee-simple estate, which passed by inheritance to the four nephews of the testator as her sole heirs at law." Section 3661 is as follows: "Estates tail are prohibited and abolished in this State. Gifts or grants to one, and the heirs of his body, or his heirs male or female, or his heirs by a particular person, or his children, or his issue, convey an absolute fee. Estates tail being illegal, the law will never presume or imply such an estate. Limitations which, by the English rules of construction, would create an estate tail by implication in this State shall give a life-estate to the first taker, with remainder over in fee to his children and their descendants, as above provided; and if none are living at the time of his death, remainder over in fee to the beneficiaries intended by the maker of the instrument."

The similarity of the facts in the two cases makes the ruling in the *Allen* case applicable here; the court saying that the will of Frank T. Ryan was an attempt to create an express estate tail; that is, that the provision, "only shall my children and the heirs of their body" receive the benefit of the estate, amounted to a gift to the children and the heirs of their body. And this, under the first part

of § 3661, gave a fee-simple title to the first taker. Another ruling similar in effect is to be found in the case of *Wiley* v. *Smith, 3 Ga.* 551, where it was said: "A testator devises property to his son William *and his children* (William at the time having no children), with devise over to the heirs named in his will upon William dying without having a child or children: *held,* that William took an estate tail, with remainder to the heirs named in the will. A testator devises property to his two sons, W. and B., *and their heirs,* with devise over to the heirs named in his will upon W. and B. *dying without child or children; held,* that the word *heir,* in the antecedent limitation, is synonymous with *issue,* or *heirs of* the body; and that W. and B. took an estate tail, with remainder to the heirs named in the will. An estate tail, by the laws of England, is converted into a fee-simple estate by the statute of Georgia." In *Stamey* v. *McGinnis,* 145 *Ga.* 226 (88 S. E. 935) ; where property was granted to "Fannie Stamey and her bodily heirs," with the provision that "this is not to be sold for any consideration; it is to remain hers and her children, hers and their natural lives," this court held that "the deed would formerly have conveyed a fee tail to Mrs. Stamey, and by virtue of the statute now embodied in the Civil Code (1910), § 3661, which declares that 'Estates tail are prohibited and abolished in this State; gifts or grants to one, and the heirs of his body, or his heirs male or heirs female, or his heirs by a particular person, or his children, or his issue, convey an absolute fee simple,' such deed, executed after this law took effect, conveyed a fee-simple estate to Mrs. Stamey." Under the English law, an estate tail was an estate which the grantee held to himself and his bodily heirs, which he could not sell or encumber so as to cut off the rights of his bodily heirs; which was not subject to his debts, and which descended to his bodily heirs only, and which if he died without bodily heirs reverted to the heirs of his grantor. In *Ewing* v. *Shropshire,* 80 *Ga.* 374 (7 S. E. 554), this court held that "A conveyance by deed of gift from a father to his daughter, executed since the adoption of the code, to wit, in March, 1877, to which the father and daughter were the only parties, and by which he conveyed certain described realty to her, 'and the lawful heirs of her body begotten, to her and their sole and separate use, and free from all debts, liabilities, and contracts of her present or any future husband,' to have and to hold unto her 'and her heirs . . to her

and them, and their own proper use, benefit, and behoof, forever in fee simple,' and warranting title to her 'and her heirs and their assigns,' passed the absolute fee to the daughter alone; and her child, though in life at the time the deed was executed, acquired no estate in the premises, either as tenant in common or as donee in remainder." See also in that decision the discussion of the provision of our statute and of the English law relating to certain features of estates tail.

And we think that the estate which Mary Wood attempted to create was an estate tail. She says that the beneficiaries "shall hold the property to themselves and their bodily heirs, without the same being subject to their debts or contracts;" that they "shall in no manner sell or encumber the same during their lifetime, and that the same shall descend to their bodily-heirs only;" and further says, "it being my desire and will that all of the property herein given, bequeathed, and devised shall be and remain in the aforementioned beneficiaries of this my last will and testament, and their bodily heirs only;" and that if they all die "leaving no bodily heirs, then the property shall go to my heirs." The words used in this last provision were the correct and technical words of an express entail. In *Gray* v. *Gray,* 20 *Ga.* 804, it was said: " Up to the year 1821 there was no legislative declaration of the effect of conveyances in fee-tail. The legislature had contented itself with prohibiting them, and left the consequences of the violation of the act to be settled by the courts. A diversity of adjudications on this subject by the courts led to the establishment of a rule by the legislature. The preamble to the act of 1821 (Cobb, 169), which establishes the rule, shows that three different constructions had been placed upon the prohibitory act, or upon conveyances prohibited by it: 1st. That conveyances in fee-tail were absolutely void. 2d. That they vest a fee-simple estate in the person to whom they are executed. 3d. That they vest only a fee conditional, as at common law. The effect of the first construction was, that no estate passed from the grantor; of the second, that the limitation over in tail was cut off; of the third, that no absolute estate vested until the performance of the condition, as having an heir of the body. The object of the legislature was, to prescribe a rule of construction, plain, certain and intelligible, which would prevent conflicts of judicial decision in regard to rights of property.

By the act, 'all gifts, grants, bequests, devises, and conveyances, of every kind whatsoever, whether *real or personal property,* made in this State, and executed in such manner, or expressed in such terms, as that the same would have passed an estate tail in real property, by the *statute of Westminster Second,* commonly called the *statute de donis conditionalibus,* are to be held and construed to vest in the person or persons to whom the same may be made or executed an absolute, unconditional fee-simple estate. Here it is seen that the legislature discarded the first and third constructions and adopted the second; so that, since the enactment of that statute, the courts are not at liberty to say that such conveyances are void and pass no estate from the grantor; nor are they permitted to hold that they pass a fee conditional at common law, to vest absolutely or not, as the condition may be performed, but that they do pass the estate, subject to no condition, to the person to whom it is made or executed; an absolute fee, not according to the intention of the testator, but to the exclusion of those in remainder, in whom and whose issue, as long as there are any, his purpose was to fix an inalienable property."

In *Ewing* v. *Shropshire,* supra, it was said: "We are ready now to enter upon the analysis and exposition of this section . . [Code of 1910, § 3661]. Its subject-matter is estates tail, and estates tail only, together with the incidents under the order of things, established partly by prior legislation and partly by the changes introduced by the code itself, of attempts to create them, or of the use of formulas in conveyancing which would create them in England, either expressly or by implication. The first clause of the section declares them abrogated and abolished. This was done both by constitution and by statute before the close of the last century. The next clause, instead of referring to the statute *de donis,* as a criterion or standard, as did the act of 1821 (Cobb's Dig. 169), annexes the consequence prescribed by that act, namely, the creation of an absolute fee to 'gifts or grants to one and the heirs of his body, or his heirs male or heirs female, or his heirs by a particular person, or his children, or his issue.' Though this enumeration of words may comprehend some not found in the statute *de donis* (see *Harris* v. *Smith,* 16 *Ga.* 550, and the dissenting opinion of Lumpkin, J., in *Gray* v. *Gray,* 20 *Ga.* 827, 832), the codifiers doubtless considered them, when used in the manner indi-

cated, that is, in immediate connection with the first or only estate granted, and not by way of limitation over, as words appropriate to the creation of an estate tail *express*. There could certainly be no doubt as to some of them being of that nature, and the freest of them all from doubt are the words 'heirs of the body.' Accordingly, these words are inserted first in the clause devoted to estates tail express, and the others follow as having the like nature and effect." See also *Tate* v. *Tate,* 160 *Ga.* 449 (128 S. E. 392).

We have been requested to review and reverse the case of *Allen* v. *Trust Company of Georgia,* supra, in case we reach the conclusion that it is applicable to the facts of this case. Upon an examination of that case, we think it is applicable, and upon review we decline to reverse it. Under the principles which we have laid down above, we are satisfied that by the provisions of the will the testator attempted to create a fee tail, and that under § 3661 of the Code of 1910, J. C. Wood, the first taker, was given an absolute indefeasible fee-simple title. This being the controlling issue in the case, the judgment of the court below must be

*Affirmed. All the Justices concur.*