COOPER *et al. v.* HARKNESS *et al.*

No. 12751.  MAY 10, 1939.

*Hutchens & Foster,* for plaintiff.

*James A. Branch, Thomas B. Branch Jr., W. W. Mundy Jr.,* and *C. B. McGarity,* for defendants.

GRICE, Justice. B. H. Cooper, administrator with the will annexed of the estate of J. B. Cooper, brought a petition for construction of the will, and for direction. The case was submitted to Honorable J. R. Hutcheson, Judge, for determination without the intervention of a jury. From the pleadings and an agreed statement of facts, the following appeared: J. B. Cooper died leaving his wife, Ledora J. Cooper, and five children, namely, H. B. Cooper, James C. Cooper, Charles G. Cooper, Dora Alma Cooper, and Eula V. Cooper, surviving him. Charles G. Cooper died after the testator's death and before the death of Ledora J. Cooper, the testator's widow. Charles G. Cooper died intestate, leaving surviving him Mrs. Bessie Hart Cooper, his wife, who later married W. L. Harkness, by whom she had a son named James Spencer Harkness; said marriage having been consummated and the son born before the death of Ledora J. Cooper, widow of J. B. Cooper, testator. Mrs. Bessie Hart Cooper Harkness died intestate; and it was agreed that all property of which she died seized and possessed, including any interest in the estate of J. B. Cooper that she may have inherited from her former husband, Charles Grady Cooper, descended to her husband, W. L. Harkness, and her son, James Spencer Harkness, who are parties to the suit. The other defendants were the surviving children and other grandchildren of the testator. J. B. Cooper in his will bequeathed to his wife (item 2) all of his property both real and personal during her lifetime. Item 3 required that the estate be kept intact until the youngest child reached the age of 21 years. Item 4 provided that whatever the testator left be equally divided between all of his five named children, after the death of his widow; and that in the event any of his said children should die before such division is made, "their shares shall go to their heirs at law." The judge rendered a decision which gave to W. L. Harkness and James Spencer Harkness a right to participate in the proceeds of the estate as being entitled to the interest of Charles G. Cooper. The other defendants filed their motion for new trial, which was overruled, and they excepted.

In seeking to determine the proper construction of any one item in a will, the whole instrument should be examined, and that has been done in this case. Nevertheless we are to ascertain what the testator meant by the language he used in item four. The record is silent as to the date of the death of the widow of Charles G. Cooper,

but it appears that the time has arrived for division of that part of the testator's estate that was left upon the death of his wife and the arrival at majority of his youngest child. Charles G. Cooper was in life at the date of his father's death, but predeceased his mother. Do the surviving children of testator, together with the children of a deceased child of the testator, take the share that would have gone to Charles G. Cooper had he lived; or did the latter by virtue of the will take a vested remainder, which at his death went to his widow as his sole heir at law? The defendants in error insist that the latter of the two questions must be answered in the affirmative, and that it follows that they as the heirs at law of the widow of Charles G. Cooper are entitled to succeed to his remainder interest. The plaintiffs in error urge the contention that the ultimate remainder, conditioned on the death of Charles G., was a "limitation over" which went only to his issue; that on his dying without issue there was no ultimate remainder which passed to any heir of his as such, and hence, since he died without issue, that part of the estate which under this item would have been his share in remainder must now be distributed to the other children of the testator and certain grandchildren standing in their parents' stead. Is the provision in item 4 which declares in effect that no division of this property shall be made until the death of the wife and the arrival at age of his youngest son, and that if any of the children should die before such division is made "their shares shall go to their heirs at law," governed by the Code, § 85-504, which in part declares that "Limitations over to 'heirs,' 'heirs of the body,' 'lineal heirs,' 'lawful heirs,' 'issue,' or words of similar import, shall be held to mean 'children,'" etc.? We have in this will a "limitation over," after the death of the widow, to the testator's children; but does item 4 contain a further limitation over to the heirs at law of any deceased child, within the meaning of the words "limitations over" as they are used in the Code? The entire Code section is in the following language: "Limitations over to 'heirs,' 'heirs of the body,' 'lineal heirs,' 'lawful heirs,' 'issue,' or words of similar import, shall be held to mean 'children,' whether the parents are alive or dead; and under such words children, and the descendants of deceased children, by representation in being at the time of the vesting of the estate, shall take."

Judge Bleckley in his great opinion in *Ewing* v. *Shropshire,* 80 *Ga.* 374, 379 (7 S. E. 554), traces the history of the provision now contained in section 85-504 of our Code. He says that the first part of the section declaring that certain phrases, or words similar thereto when in limitations over shall be held to mean children, is taken from the act of 1854 (Acts 1853-4, p. 72), but that the concluding part of the section, to wit, "and under such words children, and the descendants of deceased children, by representation in being at the time of the vesting of the estate, shall take," contains new matter inserted by the codifiers, the added words in effect declaring that such limitations "shall convey the estate in the manner prescribed in section 2250" of the Code of 1882 (1933, § 85-505) ; that is to say, "Limitations which, by the English rules of construction, would create an estate tail by implication, shall give a life estate to the first taker, with remainder over in fee to his children and their descendants." A previous part of the section last referred to states that "Gifts or grants to one and the heirs of his body, or his heirs male or heirs female, or his heirs by a particular person, or his children, or his issue, shall convey an absolute fee." The rule in Wilde's case, subsequently restated in Shelley's case, whence comes the name by which the rule is best known, was in effect this : (a) A devise or conveyance to A and his heirs, and (b) a devise or conveyance to A for life, with remainder to his heirs, placed the entire fee in A; the words "his heirs" being construed as meaning as indefinite failure of issue, which made the devise or conveyance an estate tail by implication under the English law, the phrase being void for remoteness. While in a deed or devise to "A and his heirs" we still apply the rule in Shelley's case, and treat it as putting the absolute fee in A, we have wholly abolished the rule so far as it affects limitations over. *Brown* v. *Brown,* 97 *Ga.* 531, 540 (25 S. E. 353, 33 L. R. A. 816). So, in a deed or devise to "A for life," with remainder to "his heirs," or words of like import, we treat the words "his heirs" as words of purchase, and not of limitation, and construe the instrument as creating two estates, one to "A" for life, and at his death another estate to his children; this for the reason that our act of 1854 (Acts 1853-4, p. 72), the substance of which now appears in the Code, § 85-504, declares in effect, contrary to the English rule, that the phrase "his heirs" and words of like import

shall be held to mean "children," whenever they occur in limitations over. As to the difference between a conveyance to one and his heirs, and a conveyance to one with limitations over to his heirs, and also as to what is a limitation over, see *Craig* v. *Ambrose,* 80 *Ga.* 134 (4 S. E. 1); *Ewing* v. *Shropshire,* supra; *Hertz* v. *Abrahams,* 110 *Ga.* 707 (36 S. E. 409, 50 L. R. A. 361).

We think that an examination of the act from which are taken the words "limitations over," as they appear in the Code, § 85-504, bears out the view that in the instant case the provision in item 4 that "in the event any of my said children shall die before such division is made, it is my desire that their share shall go to their heirs at law," does not contain a limitation over within the purview of our law. The caption of the original act is, "An act in relation to the limitation over of estates." Its sole section reads (omitting formal parts) as follows: "That all wills, testaments and other instruments made and executed after the passage of this act, by which property either real or personal is limited over, so as to vest in some other person or persons after the death of the first taker, upon his or her dying without heirs, or dying without issue, or dying without leaving heirs, or dying without leaving issue, or on failure of issue, or other and equivalent terms, such limitations or terms shall be held and construed to mean a definite failure of issue; that is to say, a failure of issue or heirs at the time of the death of the first taker." We have here, so far as the interest of Charles G. is concerned, no grant to him of an estate which is "limited over so as to vest in some other person or persons after the death of" Charles G. It was to go to his heirs at law only in the event he died before the contemplated division was made. The instrument created no estate in Charles G. which was limited over to someone else. If the time ever came for the heirs at law of Charles G. to take, they would not take as remaindermen in any estate given to Charles G., but they would merely take in lieu of Charles G. This harmonizes completely with what Judge Bleckley says in *Ewing* v. *Shropshire,* supra; for when answering his own inquiry, "What is a 'limitation over'?, he says: "In a large sense, and no doubt in the sense intended by the Code, it includes any estate in the same property created or contemplated by the conveyance to be enjoyed *after the first estate granted expires or is exhausted.*" (Italics ours.)

Considering the share of which the testator hoped Charles would live to be the taker, item 4 does not create in it two estates. There is only one estate—an unrestricted remainder in fee; and the only question open at the testator's death was: who was to be its tenant? Charles G. was the preference, but in order to qualify he had to be in life at the date of the division which was to occur after the death of the widow and the arrival of the youngest child at age twenty-one. That is to say, in the absence of such survival Charles G. would never have enjoyed any estate at all. Contemplating the possibility of Charles G. not surviving the designated date, the testator provided for a substitutionary estate in fee in Charles' heirs at law. This phrase "heirs at law," at the end of item 4, has no reference to inheritance from Charles G. It has no connection whatever with Charles G. It is a phrase of description, under which are to be determined the substitutionary takers in the event Charles G. fails to qualify as tenant. The phrase is referable to the testator, and the persons who may ultimately take by reason of being within its description take directly from the testator, as purchasers. It follows that this will does not involve a "limitation over," and the Code, § 85-504, and cases decided thereunder, have no application. There is no limitation over as between Charles G. and his heirs. While conditional estates are not favored, the estate here involved, we think, must be held to be a fee in Charles G., conditional on his surviving the date of division, with a substitutionary estate in his heirs in the event he failed to fulfill the condition.

Counsel for defendants in error insist that the estate of Charles G. was a vested remainder, and that under the Code, § 85-704, he having died before the time arrived for possessing his estate in remainder, leaving as his only heir at law a widow, she was entitled to a vested-remainder interest even in the absence of a clause to that effect in the will. In support of his insistence that Charles G. took a vested remainder, the following cases, among others, are cited: *DeVane* v. *Young,* 154 *Ga.* 832 (115 S. E. 661) ; *Mendel* v. *Stein,* 144 *Ga.* 107 (86 S. E. 220) ; *Ham* v. *Jarrell,* 158 *Ga.* 77 (122 S. E. 773) ; *Cochran* v. *Groover,* 156 *Ga.* 323, 332 (118 S. E. 865), and cit. The contrary view is taken by counsel for plaintiffs in error, who rely on the cases of *Sharman* v. *Jackson,* 30 *Ga.* 224; *Darnell* v. *Barton,* 75 *Ga.* 377; *Cushman* v. *Coleman,* 92 *Ga.*

772 (19 S. E. 46); *Smith* v. *Smith,* 130 *Ga.* 532 (61 S. E. 114, 124 Am. St. R. 177); *Lane* v. *Patterson,* 138 *Ga.* 710 (76 S. E. 47); *Lumpkin* v. *Patterson,* 170 *Ga.* 94, 108 (152 S. E. 448); *Ivey* v. *Davis,* 175 *Ga.* 607 (165 S. E. 605). If it was a vested remainder, his widow succeeded to his share; and she dying intestate, her interest descended to her second husband, Harkness, and her Harkness child, the defendants in error. It is not necessary, however, to classify the estate of Charles G. as a vested remainder; for if it was not, then under the will, he having died before the time arrived to divide the property, what would have been his share would go to those who were his heirs at law at that time. "When the expression 'heirs at law' is used in a will and is unaccompanied by any qualifying or explanatory language, there is but one place to which resort must be had to ascertain what persons are within the meaning of this descriptive term, and that is the statute of distributions. . . The words 'heirs at law' have in law the well-settled meaning above stated; and whenever these words are found in a will, unaccompanied by any qualifying or explanatory expressions, they will be given the meaning which the law ordinarily gives them, and only the persons will come within the class thus described who would take the property of the decedent under the statute of distributions if there had been no will." *Maclean* v. *Williams,* 116 *Ga.* 257 (42 S. E. 485, 59 L. R. A. 125). The question as to who were within the words of description must be determined as of the date of the vesting of the right of possession—the date fixed for the division. Compare *Crawley* v. *Kendrick,* 122 *Ga.* 183, 184 (50 S. E. 41, 2 Ann. Cas. 643); *Toucher* v. *Hawkins,* 158 *Ga.* 482, 488 (123 S. E. 618). The only question now before us is: who were the heirs at law of Charles G. at that date? If Mrs. Harkness was alive at that date, she was his sole heir at law, and later dying intestate, leaving defendants in error her only heirs at law, the decision of the lower court in their favor was correct. If she was dead at that time, then the court was wrong. Compare *Beasley* v. *Calhoun,* 178 *Ga.* 613 (173 S. E. 849). But as this date does not appear in the record, the judgment should be affirmed under the rule that he who alleges error must show it. Compare *Almand* v. *Almand,* 141 *Ga.* 372 (81 S. E. 228). *Judgment affirmed. All the Justices concur.*