No. 68.—JOHN C. DUDLEY *et al.* plaintiffs in error, *vs.* A. G. PORTER, defendant.

[1.] Where a father, by deed, gave a negro girl to his daughter " M S D, for and during her natural life, and to the heirs of her body, if any she should have, by W. S. D"; and afterwards, the grantor provided, that " should the said M S D die without a bodily heir by W S D, then the aforesaid negro girl and her increase, *shall then* be divided among my heirs, share and share alike" : *Held*, that these words conveyed a life estate to M S D, a fee in the property to her children by W S D, if any were living at her death ; and if no such children were then living, the same was to be divided among the heirs general of the grantor, as directed.

In Equity, in Effingham Superior Court. Decision by Judge FLEMING.

This case turned upon the construction of the following deed:

STATE OF GEORGIA, EFFINGHAM COUNTY:

This indenture, made the third day of April, in the year of our Lord, one thousand eight hundred and twenty-one, between Guilford Dudley, of the County and State aforesaid, of the one part, and Maria S. Dudley, of the same place, of the other part : *Witnesseth*, that the said Guilford Dudley, for and in consideration of the sum of one hundred dollars, to me in hand paid, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold and conveyed, and by these presents do grant bar-

gain sell and convey, unto the said Maria S. Dudley, during her natural life, and to the heirs of her body, if any she should have, by my brother W. J. Dudley, forever, a negro girl called Eliza, about three months of age, and her increase, to the said Maria S. Dudley, during her natural life, and the heirs of her body, if any she should have, by said W. J. Dudley, forever. To take into her possession, and to have and to hold the said negro Eliza during her natural life, to the sole and only proper use, and benefit, and behoof of the said Maria S. Dudley, during her natural life, and the heirs of her body, if any she have, by said W. J. Dudley, forever. And I, the said Guilford Dudley, for myself, my heirs, executors and administrators, all and singular the said bargained property, unto the said Maria S. Dudley, during her natural life, and the heirs of her body, begotten as aforesaid, shall and will warrant and defend the said negro Eliza from the claim or claims of any person or persons whatsoever; and by these presents, do warrant and defend. But should the said Maria S. Dudley die without a bodily heir by W. J. Dudley, then the aforesaid negro girl, Eliza, and her increase, shall then be considered as part of my property, and be divided among my heirs, share and share alike. In witness whereof I have hereunto set my hand and seal, this third day of April, eighteen hundred and twenty-one.

GUILFORD DUDLEY, [L. S.]

In the presence of
W. King,
W. G. Porter.

Maria S. Dudley died, leaving no children; and the present contest is between the complainants, claiming as the heirs at law of Guilford Dudley, and the defendants, as the heirs of Maria S. Dudley; and the point comes up upon a case made by agreement.

Gaulden, for plaintiff in error.

Law & Bartow; Ward & Owens, for defendant.

*By the Court.*—STARNES, J. delivering the opinion.

Do the terms of this deed import an intention to create an estate tail ?

The grant is to "*Maria S. Dudley for and during her natural life, and to the heirs of her body, if any she shall have*" *by the grantor's brother, Wm. S. Dudley, forever.* These words plainly express an intention to create a life-estate in Maria S. Dudley—must they be construed to import an intention to create an estate tail in her children or the heirs of her body, by Wm. S. Dudley ?

It is quite clear that this conveyance cannot be brought within the terms of any of the cases in which such or similar words have been held not to create an estate tail, unless it be that class of cases where subjoined or superadded explanatory words are found.

With an eye to this consideration, let us examine the superadded words in this deed, which may be looked to as in the nature of words explanatory.

We find, after reference to the heirs of the body, the words, "If any she should have by my brother, W. S. Dudley," &c. These words can have no other effect than to confine the estate which the terms import, to the heirs of the body of Maria S. Dudley by W. S. Dudley begotten, and thus to turn what would otherwise be an estate tail general, in the line of the first taker, to an estate special ; that is, an estate tail in the line of the said Maria S. by the said W. S. Dudley begotten.

We next find, at the conclusion of the deed, and after the clause of warranty, these words : "But should the said Maria S. Dudley die without a bodily heir by Wm. S. Dudley, then the aforesaid negro girl Eliza, and her increase, shall then be considered as a part of my property, and be divided among my heirs, share and share alike."

The Court below thought this clause repugnant to the former parts of the deed, and as it is a rule of construction that in a deed where two clauses are in irreconcilable contradiction

to each other, the first shall prevail, the learned Judge held that the latter clause in this deed was inoperative. The first part of the deed, by the use of terms which imported an intention to create an estate tail, vested a fee-simple in Maria S. Dudley—the latter gave her only a life estate; and as the two were thus repugnant, the first must prevail.

The general statement of this rule is undoubtedly correct. If two clauses in a deed cannot be reconciled, the first must prevail. But, if the latter be explanatory of the former, if it show that it was the grantor's intention to use the words in a sense different from what they seem to import—in a sense which coincides with the terms employed in the last clause, then *ex vi termini*, the latter clause is not repugnant to the former, and the former may be controlled by it. A grantor, for example, being without the assistance of a legal adviser, might convey property to A B and the heirs of his body, and at the end or conclusion of his deed, and before execution, append words to the following effect: " Being inexperienced and without Counsel, I am apprehensive lest I may have used the above words, *heirs of the body*, improperly, it being my intention, in their use, to signify the children of A B, and I wish so to be understood." There can be no doubt on the mind of any one, that these words would be sufficiently explanatory of, and not repugnant to the first part of the deed.

So if, in this point of view, the words before us may be regarded as explanatory, they are not repugnant to the first part of the deed, even admitting that their import is to create a life estate in Maria S. Dudley.

It is well known, that even in England, in conveyances of personal estate, where words are used importing an intention to create an estate tail, the Courts readily resort to referential construction and seize upon slight expressions in the instrument, for the purposes of explanation. When, then, in Georgia, where estates tail have been long prohibited—where all the presumptions are against them—where the words, heirs of the body have not that settled technical signification which they have in England—where no effect can be given to them

in that technical sense, and especially when (as in this case) the whole frame of the instrument shows that the writer was inexperienced in conveyancing, and without the aid of legal advice, *a fortiori*, a Court should readily lay hold on words or other portions of the instrument, which go to show that the grantor used the words, "heirs of the body", in the sense of *children.*

In the deed before us, the last clause of which has been quoted, the grantor provides, that "should the said Maria S. Dudley die without a bodily heir by W. S. Dudley, *then* the aforesaid property *shall then* be considered a part of my property, and be divided among my heirs, share and share alike".

Now the word *then,* as we have had occasion to say in another case at this term, is sometimes used as a word of reasoning—a particle of inference connecting the consequence with the premises, and sometimes as an adverb of time.  In the first sense, it is equivalent to the expression, "in that event", or "in that case", or "therefore"; in the other, it means "at that time", or "immediately afterwards".

When, in the first sense, interposed between two limitations, it can have no effect in restricting the limitation to issue, living *at the death.*   (*Beauclerk vs. Dormer,* 2 *Atk.* 308.   *Candy vs. Campbell,* 8 *Bligh. N. S.* 469.)   Though the word was held, in these cases, to be there used as a word of inference, yet the reasoning, both of Lord *Hardwick* and Lord *Brougham,* shows that if the word *be used* as an adverb of time, it may then be regarded as having the effect of restricting the limitation to issue living *at the death.*

In the sentence which we are considering, and which is quoted above, the word is of course first used as a word of reasoning; but because this is so, it is evident, that when in the same connection, it is repeated, it is a word of time.   Unless this be so, we attribute no meaning to its second use.   It is a maxim of law, that effect will be given to all the words of an instrument, if this can reasonably be done.   *Ut res magis, &c.*   The sentence, therefore, may properly be read, "should the said Ma-

riah S. Dudley die without a bodily heir, by W S D, *in that event*, the aforesaid property shall, *at that time*, be divided," &c.

But if the grantor intended that the property should go over to his heirs general, at the time of his daughter's death, without children or heirs of her body, the limitation over was not within the rule against perpetuities, and affords evidence that he did not have in his mind an indefinite failure of that daughter's issue, as without doubt, would have been the case, if he had intended by the words first used, to create an estate tail in the line of his daughter. And hence a strong presumption and inference, that he did not intend to create such an estate, in the first instance, and that he then used the words heirs of the body to designate certain individuals answering the description of children, at the death of his daughter.

Several cases in England, show that the Courts of that country, in construing limitations, proceed upon similar principles.

In the case of *Doe ex dem. Chandler vs. Smith*, (7 *Durnf. & E.* 532) a testator devised his lands to *A. and the heirs of her body forever, as tenants in common, and not as joint tenants*—and added a limitation over, if his daughter *should die without having issue on her body*. Here, the first words were held not to create an estate tail, because of the words of distributive direction " as tenants in common, and not as joint tenants". But the limitation over being held to contemplate a perpetuity, it was suffered to influence the signification of the first words so as to explain that by their use, the testator really did mean to create an estate tail. So in *Cook et al. vs. Cooper*, (1 *East.* 229.) *Pierson vs. Vickers and wife*, (5 *East.* 548,) and in *Bennett vs. Tankerville*, (19 *Ves.* 170,) a similar decision was made, and a limitation over, after an indefinite failure of issue, was allowed to control the signification of the words first used, which did not import an estate tail.

The converse of the proposition must be correct, (certainly in Georgia, where construction does not favor estates tail, nor the interests of the heir at law), viz: that words of limitation over, after a failure of issue at the death, may explain words

in the instrument previously used, which import an intention to create an estate tail.

We will only add, that it is the well settled doctrine of all the modern cases, that the words *heirs of the body* may be construed as words of purchase, whenever there is anything in the instrument, which shows that "they were used to designate certain persons, answering the description of heirs at the death of the party". (*Doe. vs. Colyear*, 11 *East.* 548. *Doe. vs. Jesson*, 2 *Bligh.* 2  *Doe. vs. Harvey*, 4 *B. & C.* 610. · 4 *Kent Com.* :238.)

These views being correct, it results that this grantor conveyed a life estate in this property to Maria S. Dudley, and a fee to her children by W. S. Dudley, if any survived her; and that, if she died without such children living at her death, then his direction was that the same should be distributed among his heirs general.

Let the judgment be reversed.