## MEGAHEE *v.* HATCHER.

In a deed executed in 1859, the granting clause was to "Stewart Beggs for the use, benefit, and advantage, in trust for said children [the children of the grantor, whose names were given in the stating clause] and the lawful issues of their bodies, free from the control or disposition of any and all persons, husbands and wives included." The habendum and tenendum clause was as follows: "To have and to hold the above-described property unto him, the said Stewart Beggs, in trust for my aforesaid children, and, on the demise of either of my aforesaid children, to such child or children he or she may leave. Each child to receive an equal share of the above-mentioned property at such time as shall hereinafter be mentioned, to wit, on the arrival at the age of twenty-one years of the living child. To have and to hold the above-described property unto him, the said Stewart Beggs, in trust for my children aforesaid, in fee simple, free from the debts, liabilities, and control of their present or future husbands, to their only benefit or behoof." *Held,* that the land was to be divided equally among the grantor's children, and a life-estate vested in each child as to the portion assigned to him or her, with remainder over, on the death of that child, to his surviving child or children.

FEBRUARY 15, 1917.

Complaint for land.  Before Judge Hammond.  McDuffie superior court.  September 18, 1915.

The action is to recover land, and the petition was dismissed on demurrer.  Counsel for plaintiff and defendant concur that the correctness of the judgment on demurrer is dependent on the construction of the deed from John Megahee to Stewart Beggs, trustee.  The plaintiff contends that under this deed his father, David Megahee, one of the beneficiaries, became vested with an estate for life in the portion of the land granted to him, with remainder over to his surviving child or children, and that the plaintiff is his surviving child and entitled to the possession of the land on the death of his father.  On the other hand the defendant contends that by a proper construction of the deed the grant was to the first taker in fee, and that no remainder estate was created. The deed is as follows: "This indenture made this first day of March, eighteen hundred and fifty-nine, between John Megahee

Senior, of the one part, Stewart Beggs of the other part, both of the County and State aforesaid, witnesseth that the said John Megahee Senr., for and in consideration of the natural love and affection which he, the said John Megahee Senr., has and bears to his children, to wit, James, Michall, John, Elizabeth, David, Mary Ann, Nancy, Robert, Jasper, and Jenny Megahee, and for and in consideration of the sum of five dollars cash in hand paid by said Stewart Beggs at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath bargained, sold, granted, and conveyed, and by these presents doth bargain, sell, grant, and convey unto the said Stewart Beggs, for the use, benefit, and advantage in trust for said children and the lawful issues of their bodies, free from the control or disposition of any and all persons, husbands and wives included, all that tract or parcel of land, situate, lying, and being in said county and bounded as follows [describing land], containing one thousand acres, be the same more or less, with all the rights, members, privileges, and appurtenances to said tract of land in any wise appertaining or belonging, and also the following negroes, to wit: Joe about twenty-five years of age, Pomp eighteen years old, Bob sixteen years old, Gilroy aged two years old. Also my interest in the steam-mill books, known as the Dearing Steam Mill Company, to wit: in accounts, notes, together with all debts, dues, demands, and claims, I as copartner have or may have in and to the books of the late Harris, Megahee & Co., and of the firm of Megahee & Beggs. Also all the individual claim as copartner in said firms in notes, accounts, or claims or demands whatsoever. Also my notes, debts, claims, and demands which may be due or owing to me in any manner at this date. To have and to hold the above-described property unto him, the said Stewart Beggs, in trust for my aforesaid children, and, on the demise of either of my aforesaid children, to such child or children he or she may leave. Each child to receive an equal share of the above-mentioned property at such time as shall hereinafter be mentioned, to wit, on the arrival at the age of twenty-one years of the living child. To have and to hold the above-described property unto him, the said Stewart Beggs, in trust for my children aforesaid, in fee simple, free from the debts, liabilities, and control of their present or future husbands, to their only benefit or behoof." It is unnecessary to set out the

other facts, because counsel for plaintiff and defendant argue only the question of the nature of the estate in this conveyance.

*J. B. Burnside* and *William H. Fleming,* for plaintiff.

*John T. West,* for defendant.

EVANS, P. J. (After stating the foregoing facts.) We will first undertake to determine the nature of the estate conveyed by this deed, according to the accepted rules of construction at common law, as modified by the statutes of this State. In the case of a conditional fee at common law, whereby an estate was given to A and his issue or to A and the heirs of his body, in exclusion of collateral heirs, A took the fee as soon as any issue was born, or it reverted to the donor's estate if no issue was born. The effect of the statute de donis conditionalibus was to convert a fee conditional into an estate tail. By the act of 1821 (Acts 1821, p. 92) fee tails, whether express or implied, were converted into an absolute estate in the first taker. *Craig* v. *Ambrose,* 80 *Ga.* 134 (4 S. E. 1). The Code of 1863, § 3230 (Code of 1910, § 3661), left express estates tail just as under the act of 1821, but changed an estate tail by implication into a life-estate with remainder over. *Ewing* v. *Shropshire,* 80 *Ga.* 374, 382 (7 S. E. 554). That code section is as follows: "Estates tail are prohibited and abolished in this State. Gifts or grants to one, and the heirs of his body, or his heirs male or heirs female, or his heirs by a particular person, or his children, or his issue, convey an absolute fee. Estates tail being illegal, the law will never presume or imply such an estate. Limitations which, by the English rules of construction, would create an estate tail by implication in this State shall give a life-estate to the first taker, with remainder over in fee to his children and their descendants, as above provided; and if none are living at the time of his death, remainder over in fee to the beneficiaries intended by the maker of the instrument." The precise question for decision is whether the children of the grantor in the deed under consideration took an express fee tail in the premises, converted into a fee simple by the act of 1821, or whether they took a life-estate, either because the words, "and on the demise of either of my aforesaid children, to such child or children he or she may leave," create a limitation over to the grantor's grandchildren who take as purchasers, or because of an implication of an estate tail from these words. It is argued that these words

are words of limitation and equivalent to "heirs of the body" of the first grantees. The case of *Childers* v. *Childers, 21· Ga.* 377, is relied on as sustaining this conclusion. That case involved the construction of a will executed in 1843. The bequest was expressed in these words: "To my daughter, Nancy Childers, I give and bequeath my negro girl Clarissa, which property I give to Nancy Childers, the wife of John Childers, of this county, and at her death to the heirs of her body, with her increase." The court held that there was no limitation over, and that an absolute estate vested in the first taker. The reasoning of the court was, that the words, "at her death," did not vary the technical meaning of the words, "heirs of her body," and the bequest was legally the same as if it had been to "Nancy Childers and the heirs of her body;" that the bequest did not create a limitation over, but did create an estate tail, which was converted into a fee simple. There is a clear differentiation between the bequest in that will and the deed under consideration. The bequest as construed by the court created an express fee tail; the grant in the deed is not to the grantor's children and the heirs of their bodies,· but to them and, on the demise of either, to "such child or children he or she may leave;" that is, to surviving children; and this prevents the grant from being an express fee tail. Furthermore, under the English rules of construction a devise or grant limited upon words importing an indefinite failure of issue was uniformly held to be void for remoteness; and this rule was in force in this State when the will in the *Childers* case was made. Since then it has been abrogated by the act of 1854, codified in the Civil Code of 1910, § 3662. We think that the grant over to the surviving children of the first takers is to them as purchasers, and such words should not be construed as words of limitation. *Miller* v. *Hurt,* 12 *Ga.* 357. In the case just cited, Lumpkin, C. J., quoted approvingly and applied the following from 2 Jarman on Wills, 315: "that it is now admitted on all hands that a devise to A and his wife, *and after their death to their children,* gives an estate for life to the parents, with remainder to their children; and that the notion that such a bequest creates an estate tail is wholly untenable." The words "on the demise," in this deed, can have no different import than the words, "after the death," had the latter been used. Conveyances similar to that under review have been before this

court for construction. In *Ford* v. *Cook,* 73 *Ga.* 215, "a testator made a will in 1856, and died in 1859. The thirteenth item contained the following provisions: ' I will and bequeath to Caroline C. Cook, my daughter, twenty-five hundred dollars, with the following reductions, viz.: one lot of land [describing it] valued at five hundred dollars; also a negro girl named Nancy, valued at four hundred dollars; also reduction of notes and accounts that I hold against John H. Cook, her husband; said property and money to be free from the disposition of her husband, John H. Cook, and to be for her own separate benefit, and at her death to go to her children.' By another item the testator appointed his executors trustees, ' to hold in trust for me and in my name the property herein bequeathed to my daughters [naming them], and to hold the same in trust for them and their bodily heirs.' *Held,* that the will created an estate for life in the daughter of the testator, with remainder to her children living at her death." In *Bush* v. *Williams,* 141 *Ga.* 62 (80 S. E. 286), the grant was to Josephine Henrietta Williams, and after the description of the property conveyed these words were employed: "These lands after her death, (the) said party of the second part, to belong to the heirs of her body; and if no heirs, then to revert to and become the property of Peter C. Roberts and Clarisa C. Roberts. To have and to hold the said above-granted and described property, with all and singular the rights, members, and appurtenances thereunto appertaining, to the only proper use, benefit, and behoof of the said party of the second part, her heirs, administrators, executors, and assigns, in fee simple." It was held that the first taker took a life-estate, and upon her death her sons took a vested fee. In *King* v. *McDuffie,* 144 *Ga.* 318 (87 S. E. 22), it was held that under the Civil Code (1910), § 3661, a deed to a woman "and the heirs of her body after her death" conveys a life-estate to the first taker, with a remainder over to her children.

We think that the clause, "Each child to receive an equal share of the above-mentioned property at such time as shall hereinafter be mentioned, to wit, on the arrival at the age of twenty-one years of the living child," referred to the time each of the immediate grantees was to have possession of his or her respective share of the land, and does not militate with our interpretation of the deed as to the estate granted in the land.

Looking at the deed as a whole, the intention of the maker seems to have been to give the land to his ten children, to be equally divided between them at the time indicated, and the portion assigned to each child to vest in him for life, with remainder over to his surviving child or children. Giving the deed this construction, it was error to dismiss the petition on demurrer.

*Judgment reversed. All the Justices concur.*