EVANS *et al. v.* EDENFIELD *et al.*

No. 7553. JULY 18, 1930.

*A. S. Bradley, A. S. Bradley Jr.,* and *Hugh R. Kimbrough,* for plaintiffs in error.

*Alfred Herrington Jr., Harold Hirsch,* and *Marion Smith,* contra.

HINES, J. On March 3, 1879, J. C. Morgan conveyed to his daughter, Susan Melvina Edenfield, in consideration of natural love and affection, described realty, the deed reciting that the grantor "does by these presents give, grant, bargain, and convey unto the said Susan Melvina Edenfield, daughter, and then to the heirs of her body," the land mentioned, "and to hold the above-granted premises to said Susan Melvina Edenfield and then to the heirs of her body in fee simple; and the [said] J. C. Morgan will and his executors and administrators shall the said property to the said Susan Melvina Edinfield and then to the heirs of her body forever warrant and defend," etc. By several successive conveyances, beginning January 13, 1888, the record title and possession of the land was passed from Susan Melvina Edenfield until October 17, 1912, when it rested in W. J. Evans. Title to the land is now claimed by his widow, Mrs. Mary Evans, by reason of having been set apart to her as a year's support. John Hancock Mutual Life Insurance Company holds a deed dated August 28, 1906, conveying the property to secure a debt. Susan Melvina Edenfield died on January 24, 1929. On May 22, 1929, J. C. Edenfield and others, some of them being the children of Susan Melvina Edenfield, and others being children of her deceased son, Sterling Edenfield, brought ejectment against Mrs. Evans and the Insurance Company; alleging that the deed of J. C. Morgan conveyed only a life-estate to Susan Melvina Edenfield, and then a remainder in fee simple to the petitioners, and that the deed to secure debt held by the Insurance Company constitutes a cloud upon their title; and

praying a decree removing the same, and establishing title to the land to be in them according to their several alleged interests. Both defendants demurred generally, and the exception is to a judgment overruling those demurrers.

On March 3, 1879, J. C. Morgan, in consideration of natural love and affection, by deed conveyed unto "Susan Melvina Edenfield," his daughter, "and then to the heirs of her body," certain described land, "and to hold the above-granted premises to said Susan Melvina Edenfield and then to the heirs of her body in fee simple; and the [said] J. C. Morgan will and his executors and administrators shall the said property to the said Susan Melvina Edenfield and then to the heirs of her body forever warrant and defend." This case involves the proper construction of the above instrument. Does this deed convey to the daughter an estate in fee, or does it convey to her a life-estate, with remainder to her children? It is undoubtedly true that a conveyance to a daughter and the heirs of her body, in the absence of anything further, creates a fee in the daughter. Such words ex vi termini import an estate tail; and there being nothing explanatory annexed to restrict their meaning, an absolute estate is vested in the first taker. This is so because "Estates tail are prohibited and abolished in this State. Gifts or grants to one, and the heirs of his body, or his heirs male, or heirs female, or his heirs by a particular person, or his children, or his issue, convey an absolute fee. Estates tail being illegal, the law will never presume or imply such an estate. Limitations which, by the English rules of construction, would create an estate tail by implication, in this State shall give a life-estate to the first taker, with remainder over in fee to his children and their descendants, as above provided; and if none are living at the time of his death, remainder over in fee to the beneficiaries intended by the maker of the instrument." Civil Code (1910), § 3661; *Hollifield* v. *Stell,* 17 *Ga.* 280; *Whatley* v. *Barker,* 79 *Ga.* 790 (4 S. E. 387); *Ewing* v. *Shropshire,* 80 *Ga.* 374 (7 S. E. 554); *Durant* v. *Miller,* 88 *Ga.* 251 (14 S. E. 612); *Griffin* v. *Stewart,* 101 *Ga.* 720 (29 S. E. 29); *Stamey* v. *McGinnis,* 145 *Ga.* 226 (88 S. E. 935); *Lane* v. *Cordell,* 147 *Ga.* 100 (92 S. E. 887); *Mosley* v. *Brown,* 154 *Ga.* 769 (115 S. E. 260). Under the above section of the code a deed to one and the heirs of his body after his death conveys a life-estate to the first taker, with a remainder over to his children. *Ford* v.

*Cook,* 73 *Ga.* 215; *Bush* v. *Williams,* 141 *Ga.* 62 (80 S. E. 286); *King* v. *McDuffie,* 144 *Ga.* 318 (87 S. E. 22). A grant to one for life, and to his oldest male heir at the time of the decease of such life-tenant, does not create an estate tail in the first taker, but a life-estate in him, with remainder in fee simple to his oldest male heir living at his decease. 4 Thompson on Real Prop. § 3357; Smith *v.* Collins, 17 R. I. 432 (22 Atl. 1018). In the present case, however, the deed does not provide in totidem verbis that the land conveyed shall vest in the heirs at law of the daughter after her death. The deed in this case conveys the land to the daughter "and then to the heirs of her body." What is the force and effect of the word *then* as used in this deed, and what effect shall we give to it in construing this instrument? This word is sometimes used as a word of reasoning, or as a particle of inference connecting the consequence with the premises, and sometimes as an adverb of time. When used as an adverb of time this court has defined *then* as meaning "immediately afterwards." *Dudley* v. *Porter,* 16 *Ga.* 613, 617. If we insert the words *immediately afterwards* in place of the word *then* in this conveyance, the grant would be to the daughter and immediately afterwards to the heirs of her body. In *Dudley* v. *Porter,* supra, this court said: "It is well known, that even in England, in conveyances of personal estate, where words are used importing an intention to create an estate tail, the courts readily resort to referential construction and seize upon slight expressions in the instrument for the purpose of explanation. When, then, in Georgia, where estates tail have been long prohibited—where all the presumptions are against them—where the words, heirs of the body, have not that settled technical signification which they have in England—where no effect can be given to them in that technical sense, and especially when (as in this case) the whole frame of the instrument shows that the writer was inexperienced in conveyancing, and without the aid of legal advice, *a fortiori,* a court should readily lay hold on words or other portions of the instrument, which go to show that the grantor used the words, 'heirs of the body,' in the sense of children."

While the words "heirs of the body" prima facie import an estate tail, yet "the general run of cases makes this plain, that, notwithstanding they sound like words of limitation, yet upon circumstances and the intention of the parties, they may be con-

strued words of purchase, and descriptive of the person who is to take." Hodgeson v. Bussey, 2 Atk. 89, 26 Eng. Rep. (Reprint) 455. This court has expressly approved this principle. *Sharman* v. *Jackson*, 30 *Ga*. 224. Furthermore, the habendum clause is to the daughter "and then to the heirs of her body in fee simple." By the warranty clause the grantor warrants the title of the property conveyed to the daughter "and then to the heirs of her body forever." The above language of the habendum clause expressly gives to the heirs of the body of the life-tenant an estate in fee simple. It is palpable from the use of the above language in the habendum clause that the obvious intent of the conveyance was to constitute in the descendants of the daughter a new stock of inheritance, and not that the issue of the daughter should take as heirs by descent and succession, but that they should take as purchasers. *Mallery* v. *Dudley*, 4 *Ga*. 52, 61. One of the tests applied by the courts for the purpose of ascertaining the nature of the estate to be created, and notwithstanding the words of the instrument would *per se* be construed into a limitation, yet they will be held to be words of purchase where a new inheritance is grafted on the words of entail, or where explanatory words are superadded. *Benton* v. *Patterson*, 8 *Ga*. 146; *Gaboury* v. *McGovern*, 74 *Ga*. 133, 142. In construing this instrument we should seek diligently for the intention of the grantor. We can not presume, as we have seen, that he intended to create an estate tail, which was prohibited by statute at the time this instrument was executed. Then what was his intention? Clearly the intention of the donor was to give to his daughter this land for life, and at her death to her children. The rulings in *Jones* v. *Jones*, 20 *Ga*. 699, and in *Childers* v. *Childers*, 21 *Ga*. 377, were made prior to the Code of 1863. In the first case the gift was to the daughter during her natural life, and then to her bodily heirs. In the second case the grant was to the daughter, and at her death to the heirs of her body. If these instruments had been executed after the Code of 1863 went into effect, they would not have been construed to create estates tail, and that the first takers took estates in fee. Properly construed, the deed which we have under consideration conveyed to the daughter an estate for life, with remainder to her children. It necessarily follows that the trial judge properly construed this instrument as creating a life-estate in the daughter, with remainder to her children.

On a motion for rehearing the former judgment of this court in this case is set aside, and the present judgment is substituted therefor.

*Judgment affirmed. All the Justices concur, except Hill and Gilbert, JJ., who dissent.*

GILBERT, J., dissenting. The legal effect of the deed executed by Morgan to his daughter, Susan Edenfield, is precisely the same as if the word "then" had been omitted in the phrase "and then to the heirs of her body," wherever these words occur in the deed. The reason is that the word "then" standing alone is too vague, uncertain, and indefinite to have any meaning whatsoever. It is true that in construing all contracts no word should be treated as redundant, if this reasonably can be avoided. But in the present instance it is impossible to give it any meaning with any reasonable certainty that it is a correct meaning. Bouvier's Law Dictionary defines the word "then" as follows: "As an adverb of time, means 'at that time,' referring to a time specified, past or future. It has no power of itself to fix a time; it refers to time already fixed. · Anderson; 16 S. C. 329. As an adverb of contingency, means 'in that event.' Id.; 20 N. J. L. 505. Although strictly an adverb of time, it often intends an event or contingency, and is equivalent to 'in that event,' or 'in that case.' In this sense it designates a limitation of an estate, or a future contingency on which it is made to depend. Thus employed, it is a word of reference, not indicating any particular point of time. Id.: 6 Gray, 24." It is impossible to know whether the grantor intended to carve out a life-estate for his daughter or whether he intended an estate for years. The Civil Code (1910), § 3569, declares, in part: "Every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance. If a less estate is expressly limited, the courts shall not by construction increase such estate into a fee, but, disregarding all technical rules, shall give effect to the intention of the maker of the instrument, as far as the same is lawful, if the same can be gathered from its contents." Certainly no particular estate less than a fee is *expressly* limited. That being so, the word "then" being too indefinite, the conveyance should be construed to convey the fee. "Gifts or grants to one, and the heirs of his body, . . convey an absolute estate." Civil Code (1910), § 3661. *Ewing* v. *Shropshire*, 80 *Ga.* 374, 380;

**810**

*Stamey* v. *McGinnis,* 145 *Ga.* 226; *Lane* v. *Cordell,* 147 *Ga.* 100; *Pace* v. *Forman,* 148 *Ga.* 507 (97 S. E. 70); *Mosley* v. *Brown,* 154 *Ga.* 769; and see *Megahee* v. *Hatcher,* 146 *Ga.* 498, 501 (91 S. E. 677). If *Bush* v. *Williams,* 141 *Ga.* 62, *King* v. *McDuffie,* 144 *Ga.* 318, and *Pearre* v. *McDonald* 168 *Ga.* 752, are in conflict with the rule stated, they must yield to *Ewing* v. *Shropshire,* supra. There is no division of opinion that if the word "then" is sufficient, in the present instance, to expressly limit the estate of the daughter for her life, the court should not, by construction increase such estate into a fee. Mr. Justice Hill concurs in this dissent.